27 N.J. Super. 183 (1953)
99 A.2d 210
KIDDE MANUFACTURING CO., INC., AND BLOOMFIELD TOOL CORPORATION, PLAINTIFFS,
v.
THE UNITED ELECTRICAL RADIO & MACHINE WORKERS OF AMERICA, LOCAL 437; AND OTHERS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 25, 1953.
*184 Messrs. Reed, Reynolds, Smith & Kramer (Mr. C. Russell Kramer appearing), attorneys for the plaintiffs.
Messrs. Gross & Blumberg (Mr. Morton Stavis appearing), attorneys for the defendants.
BIGELOW, J.S.C.
This is a labor dispute in which the plaintiffs, namely, the employers, move for an interlocutory *185 injunction restraining the defendant union from hindering or preventing plaintiffs' employees from entering the plaintiffs' plants. The plaintiffs are two corporations, subsidiaries of the same parent company. Their plants are located on opposite sides of Farrand Street in Bloomfield, and are operated in some respects as a single unit. The companies had a contract with the defendant union, dated in July 1952, and to "continue in full force and effect until the first day of July 1953, and from year to year thereafter unless terminated by either party." In April the union gave notice of termination of the contract and negotiations for a new contract began between the parties and continued until after July 1, but without success. On July 27 the men struck. Many of them have gathered daily in Farrand Street and, standing or marching close together, have effectively prevented entrance into the plants. It is, of course, settled law that the employees have a right to go to and from their work without hindrance and that the employer has a corresponding right that his employees be unmolested.
"There is no right more essential or which we more rely upon in our daily living than the right to use the public streets and to enter wherever we are welcome. We count on it not only for our own free movement, but for others who may wish to come to us. The means taken to deprive one of this right are of little importance. What complainants are entitled to is free access to their plants as against any means and tactics whatsoever." Phelps Dodge etc. Corp. v. United Electrical Workers, 138 N.J. Eq. 3 (Ch. 1946); affirmed Westinghouse Electric Corp. v. United Electrical etc., 139 N.J. Eq. 97 (E. & A. 1946).
The defendants have violated this right of the plaintiffs, and an injunction would go except for the special matters urged in opposition, which I will now consider.
The defendants cite N.J.S. 2A:15-54, which reads:
"No restraining order or injunctive relief shall be granted to any plaintiff who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."
*186 It is established that the statute requires no more than a reasonable effort to settle by any one of the three methods named,  negotiation, mediation, arbitration. Isolantite v. United Electrical etc. Workers, 130 N.J. Eq. 506 (Ch. 1941); affirmed 132 N.J. Eq. 613 (E. & A. 1942). But yet an employer must make a bona fide effort to settle.
"We say to the complainant, do not bother the court unnecessarily; talk over the matter first with your adversary and you may be able to reach an agreement. * * * It is the duty of an employer to confer, or offer to confer, with the representatives of the union; to listen attentively to what they have to say; to explain to them carefully his own position, and to reconsider that position in the light of all the facts and arguments presented by the union. The employer must be willing to continue this process as long as there is a prospect of a successful outcome, or until he finds himself driven to seek the aid of the court. An employer who has done this has made every reasonable attempt to settle the controversy by negotiation and has complied with the statute." Phelps Dodge, etc., Corp. v. United Electrical, etc., Workers, supra.
The defendants say that the companies have not bargained in good faith.
The companies in the present instance were represented in the bargaining process only by a lawyer who was in general practice but who for several years had taken an active part in the negotiations with the union. Also, during the past year, he had represented the companies in the settlement of grievances. But the committee representing the men in the bargaining process and the agent of the union naturally considered him an outsider, with no personal knowledge by which to assess the reasonableness of their position. And he was allowed little discretion by his clients. The character and powers of the person designated by an employer as bargaining agent should be taken into consideration in order to decide whether the employer's effort to negotiate was made in good faith. Great Southern Trucking Co. v. N.L.R.B., 127 F.2d 180 (C.C.A. 4 1942); cert. den. 317 U.S. 652; 63 S.Ct. 48, 87 L.Ed. 524 (1942). The lawyer who acted for plaintiffs seems to have made little effort to explain the companies' position or to persuade the *187 men to accept it. Yet I have concluded that the companies bargained in good faith. A peaceful settlement, without a strike, would have been so beneficial to the companies that I cannot believe they failed to try sincerely to reach an agreement. Poor judgment on the part of the management, but not bad faith in this respect.
The defendants also assert that the plaintiffs have failed to comply with an obligation imposed by law. By the contract between the parties, dated July 10, 1952, each company agreed that employees would receive vacations based on "seniority accumulated prior to July 1st of the vacation year"; that at the company's election the plant might be shut down for vacation purposes for two weeks in July or August, and that the employees would receive vacation pay "at the hourly base rate in effect at the start of their vacations."
The companies, during May, gave notice that the vacation shut-down would begin Friday night, July 10, and the plant accordingly was closed from that day until Monday morning, July 27, 1953. That same Monday, the strike started. The companies have not paid, and refuse to pay, the specified vacation pay because they claim that they were relieved of this obligation by the expiration of the contract June 30, 1953. This claim appears to me to be entirely without substance. The stipulated vacation pay is compensation for services rendered during the contract year. The employees' right to the pay was not forfeited by the termination of the contract. Textile Workers Union v. Paris Fabric Mills, 22 N.J. Super. 381 (App. Div. 1952).
The statutory prohibition of an injunction to one who has failed to meet his obligations is a phase of the doctrine that denies equitable relief to one whose hands are unclean. It is based on conscience and good faith. Vulcan Detinning Co. v. American Can Co., 72 N.J. Eq. 387, 12 L.R.A.N.S. 102 (E. & A. 1907). The Legislature did not intend that an employer must go without the aid of the court if, in good faith and in a situation where lawyers might well differ as to his obligations, he takes a stand which the court finds *188 to be untenable. But the question whether the companies are liable for vacation pay, does not seem debatable since the Paris Fabric Mills decision; and I am constrained to find that the plaintiffs have been aware of their liability despite protestation to the contrary. Under date of July 10 they wrote, "Undoubtedly, when the labor dispute is settled, this payment will be made."
But is an obligation arising from contract one "imposed by law" within the meaning of the statute? I think so. It is law that creates the sanctions for contractual duties. Lastly, is the obligation to pay for the vacations which the employees earned prior to last July, involved in the labor dispute now before the court?
Vacation pay was not a matter on which the parties differed during their negotiations last May and June and early July. The pay scale seems to have been the principal item in dispute. But on Tuesday, July 7, the companies circulated word that, "If an agreement is not reached by the end of this week, the company is not obligated and will pay vacation money to its hourly employees." On July 9 they offered to raise their wages seven cents an hour, and said it was the final offer. The next day the union rejected the offer and two weeks later notified the companies that the men were about to go out on strike. The evidence proves that the companies' refusal to pay for vacations has won the strikers support from the salaried employees and others, and has stiffened their own determination. This maneuver of the companies, intended to move the union to accept the companies' offer, has been an obstacle to the adjustment of the difference between the parties. By the time this action for an injunction was instituted, the 1953 vacation pay had clearly become a matter "involved in the labor dispute."
Because of the breach of the companies' obligation to pay for vacations, the motion for an injunction will be denied, but without costs and without prejudice to a renewal of the application after paying for the vacations and on two days' notice, provided, of course, it then appears that the picketing is still conducted in an unlawful manner.