JOHN WILLIAM BUTLER, PLAINTIFF, AND STATE OF NEW JERSEY, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, INTERVENOR-APPELLANT, v. BAKELITE COMPANY, DIVISION OF UNION CARBIDE CORP., AND METROPOLITAN LIFE INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.

Argued January 11, 1960—Decided April 4, 1960.

156

*Mr. Herman D. Ringle* argued the cause for intervenor-appellant (*Mr. David D. Furman,* Attorney General, attorney).

*Mr. Nicholas Conover English* argued the cause for defendants-respondents (*Messrs. McCarter and English,* attorneys).

The opinion of the court was delivered by

HALL, J. This appeal is concerned with whether benefits concededly due plaintiff, a former employee of defendant

Bakelite Company, by reason of non-work-connected disability occurring during unemployment following his layoff for lack of work, should be paid under the unemployment compensation law (*N. J. S. A.* 43:21–4(*f*)) by the intervenor Division of Employment Security, or pursuant to the temporary disability benefits statute (*N. J. S. A.* 43:21–25 *et seq.*) by defendant Metropolitan Life Insurance Company, Bakelite's private plan insurance carrier for such benefits. The controversy is what would be called "a jurisdictional dispute" in the labor field. The Division, in an administrative proceeding, found the insurer to be the one to pay. The Appellate Division reached the opposite conclusion. 56 *N. J. Super.* 405 (1959). We granted certification on the Division's petition. 30 *N. J.* 604 (1959).

The problem arises because Butler was entitled to a two weeks vacation with pay at the time of the layoff, but had not received it. He was paid two weeks wages instead, pursuant to a provision of the plant collective bargaining agreement, which read: "When an employee who has attained initial vacation eligibility is terminated, he is entitled to any Current Year Vacation that has not been taken." The question is whether that payment, in fact or in law, continued Butler "in employment" (see *N. J. S. A.* 43:21–27(*b*)) for the additional two weeks period. If it did, the money is owed him by Metropolitan as temporary disability benefits; if it did not, the obligation arises under the unemployment compensation law and the Division is the debtor.

We see no foundation for the Division's contention that, as matter of fact, the quoted provision of the union contract by its terms conclusively established the continuance of a laid-off employee in the employment relation until the expiration of the period which the vacation pay would represent as wages. The rather inartistic language used certainly does not say that in so many words, and giving due allowance to obvious lay draftsmanship (see *Kennedy v. Westinghouse Electric Corporation*, 16 *N. J.* 280, 287 (1954)),

we fail to see how it can reasonably be concluded that such was the intention. It specifies entitlement to the money equivalent of an earned vacation whenever an employee "is terminated." Termination, a word in itself connoting finality, is defined elsewhere in the instrument to mean "quit, discharge, layoff, retirement, death or removal from the payroll because of disability." From the nature of the designated events taken as a group, there is nothing to indicate but that definitive separation from the employment relation at the moment of the event was, in fact, contemplated. Nor does any sound factual reason appear why the employer would desire the status to continue or why we should fictionally say that it did. This is not a case where a method of treatment adopted by an employer would have the effect, if not struck down, of denying all benefits to a present or former employee otherwise entitled. *Cf. Campbell Soup Co. v. Board of Review, Division of Employment Security,* 20 *N. J. Super.* 80 (*App. Div.* 1952).

The evidence before the Division and the finding of its hearing officer were to the effect that Butler's layoff was a permanent separation from his job. There is nothing in the record to indicate that it was only temporary, with some fixed, or even prospective, date of return. A layoff in such circumstances amounted to a discharge without the connotation of unsatisfactory work or conduct. Assuming he may have had some contractual right to preference in reemployment, *i. e.,* the creation of new employment relationship, if additional work later required additions to the reduced force, in the meantime he owed no obligation to Bakelite to work or report for work. He was not being continued in readiness to render service at some future time. *Cf. Paramus Bathing Beach v. Division of Employment Security, Department of Labor and Industry,* 31 *N. J. Super.* 128, 133 (*App. Div.* 1954). Quite apart from the matter of whether a collective bargaining agreement, if it actually did provide for the continuation of the employment relation beyond a final cessation of work, would be binding on the

employer's temporary disability insurer or could ever affect a statutory obligation, which we need not here consider, we are convinced this agreement did not do so. It is clear to us the employment relation between Bakelite and Butler in fact ended the day he was laid off. The vacation pay was nothing more than a payment of money to make up for the vacation earned but not taken. Another provision of the union contract aptly so refers to it as "accrued vacation pay which may be payable [at layoff] under the company vacation plan." All of this is factually inconsistent with a thought that it extended the employment relationship.

The case, therefore, boils down to a determination of whether the statutes involved, by virtue of their underlying purposes, definitions and terms, require a different conclusion as matter of law. It should be observed that we consider the statutory provisions and not the provisions of the contract between Bakelite and Metropolitan insuring the former's obligations under the temporary disability benefits law, since the latter cannot be more restrictive than the law itself with respect to eligibility requirements for benefits (*N. J. S. A.* 43:21–32(*b*)) and there is nothing to indicate that the policy here is more liberal.

For present purposes, it may be noted that employee welfare legislation in New Jersey commenced with the workmen's compensation act providing benefits for work-connected disability regardless of fault. The next step was the unemployment compensation law (*R. S.* 43:21–1 *et seq.*), enacted to lighten the burden of economic insecurity on the worker due to involuntary unemployment caused without fault on his part. *R. S.* 43:21–2. A condition of eligibility for benefits is that the unemployed individual be able to and available for work (unless his employer has placed him on involuntary vacation without pay for a specified period). *N. J. S. A.* 43:21–4(*c*). It may be observed that in this case Butler could not qualify for unemployment compensation benefits under the ordinary pro-

visions of the statute because his disability prevented him from being able to work.

From a social standpoint there remained gaps in the benefit scheme. There was no protection against wage loss resulting from disabling, involuntary, non-compensable accident or sickness suffered while in employment or from loss of unemployment compensation benefits because of physical inability to work by reason of similar occurrence while out of work. The temporary disability benefits law was enacted in 1948 (*L.* 1948, *c.* 110; *N. J. S. A.* 43:21–25 *et seq.*) to cover the former situation and fill that gap (*N. J. S. A.* 43:21–26), either by means of a state-operated fund or a private plan set up and run by an employer in accordance with the statute. *Janovsky v. American Motorists Insurance Co.*, 11 *N. J.* 1, 4 (1952); *Potts v. Barrett Division, Allied Chemical & Dye Corporation*, 48 *N. J. Super.* 554, 559 (*App. Div.* 1958); *Bogda v. Chevrolet-Bloomfield Division, General Motors Corporation*, 8 *N. J. Super.* 172 (*App. Div.* 1950). The same statute (*L.* 1948, *c.* 110, § 20) also filled the second gap by amending the benefit eligibility section of the unemployment compensation law. *N. J. S. A.* 43:21–4. Subsections (f) and (g) were added thereto, the former providing that where an unemployed individual suffered a non-compensable accident or sickness resulting in his total disability to perform any work for remuneration and would be entitled to unemployment compensation benefits except for his inability to work, he should nonetheless receive such benefits, paid, however, from the state fund created under the temporary disability benefits law (rather than from the unemployment compensation fund) and not charged to any employer in computing experience rate for unemployment compensation contributions. Parenthetically it may be noted that, up to this point, Butler fulfills all requisites for unemployment compensation benefits under subsection (f) and if there were no private plan involved, the only question would be out of which pocket the Division would pay him. However, subsection (g)(7) provides

that no benefits shall be payable under (f) "for any period of disability commencing while such individual is a 'covered individual' as defined in * * * the Temporary Disability Benefits Law."

Having in mind the purpose and design of the latter law, and without regard for the moment to the exclusionary provision of the unemployment compensation act just mentioned, it seems clear on principle that the temporary disability statute was not intended to provide the benefits in the instant situation. It obviously aims at the alleviation of economic insecurity during an interruption in one's employment and is not meant to reach the situation where one who is unemployed becomes disabled and unable to work. This is especially manifest when the contemporaneous enactment of subsection 4(f), exactly tailored to the factual setting, is noted. Therefore, there is no sensible reason to hold otherwise unless it is absolutely compelled because the claimant is a "covered individual" under the temporary disability act.

We must consequently proceed to examine the pertinent and, it may be said, somewhat bewildering and unrewarding provisions of that law. The definition section states that "covered individual" means any person who is "in employment," as the latter term is defined by the unemployment compensation law, "for which he is entitled to remuneration from a covered employer, or who has been out of such employment for less than two weeks." *N. J. S. A.* 43:21-27(*b*). Perhaps it should be noted that neither our research nor that of counsel has uncovered the reason for the extra two-week period of coverage. To apply the time element concretely here, Butler was laid off on June 16, 1958. His disability occurred on July 3. If his employment was continued by reason of the vacation pay for the two weeks which the amount of it represented in wages, the additional two-week period of coverage prescribed by the statute would not expire until July 14 and the disability would have commenced while he was still a "covered in-

dividual." If, on the other hand, employment ceased at the moment of the layoff, the extra two weeks of temporary disability coverage would expire on June 30, prior to the occurrence of disability.

■ Reverting to the unemployment compensation law, as directed, to learn the definition of "employment," *section* 19(*i*)(1) thereof (*N. J. S. A.* 43:21–19) tells us that it means *"service * * ** performed for *remuneration* or under any contract of hire * * *."* (Emphasis supplied) "Service" is nowhere statutorily defined, but "remuneration" is. *Section* 19(p) says it constitutes "all compensation for personal services," which might be considered to result in circuity of definition. So no statutory section gives us a precise definition of "employment." It seems to be a flexible concept, depending on the circumstances of the particular situation. We think that, for purposes of the instant factual setting and issue, "employment" should be defined, as it was in *Paramus Bathing Beach v. Division of Employment Security, Department of Labor and Industry, supra* (31 *N. J. Super.,* at *page* 132), as importing "the existence of a relationship intrinsically that of employer and employee with the normally affiliated compensation." The relevant connotation would be that the employee is actually working for the employer or is being kept on the payroll in readiness for work at some future time or is on a paid vacation or other compensated leave for a definite period at the end of which time he is to return to the performance of his duties. Factually, as has been pointed out, none of these exist here. Butler was "terminated" on June 16. So we conclude that, on the basis of statutory interpretation as well as from the point of view of the purposes of the whole scheme of benefits, Butler is eligible under *section* 43:21–4(*f*) of the unemployment compensation law and not under the temporary disability benefits act.

■■ While the Appellate Division reached the same conclusion, it did so on the basis that the vacation pay amounted to "deferred compensation, in lieu of wages, earned in part

each week the employee works, and payable at some later time" (here the date of layoff) and consequently could not operate "to extend the period of employment beyond the date of total separation." (56 *N. J. Super.*, at *page* 409.) This concept has been relied on in non-analogous situations. *Botany Mills, Inc. v. Textile Workers Union of America, A. F. L.-C. I. O.*, 50 *N. J. Super.* 18, 30 (*App. Div.* 1958), certification granted 27 *N. J.* 320 (1958), appeal dismissed, April 27, 1959; *Kidde Manufacturing Co. v. United Electrical Radio and Machine Workers of America, Local 437*, 27 *N. J. Super.* 183, 187 (*Ch.* 1953); *Textile Workers Union of America v. Paris Fabric Mills, Inc.*, 18 *N. J. Super.* 421 (*Cty. Ct.* 1952), affirmed 22 *N. J. Super.* 381 (*App. Div.* 1952). And it is not entirely inappropriate here. Another section of the collective bargaining agreement previously adverted to provided that the "layoff allowance" (a further sum paid at the time) was to be in addition to "accrued vacation pay which may be payable under the company vacation plan." It may therefore logically be argued that the vacation allowance given plaintiff constituted compensation for past services rendered Bakelite and did not operate to extend his employment, particularly because he did not receive a vacation in the true sense of respite from labor with return thereafter, but in effect was discharged at the date of the layoff. However, reliance on this theory to sustain the result reached in the instant situation might be construed, as the Division pointed out in support of its petition for certification, to require regular unemployment benefits to be paid, where no disability was involved, to all laid-off workers for periods immediately following the layoff. Our law is well settled that an employee on paid vacation for a definite time, who is to return to his job at the conclusion thereof, remains in "service" and so in employment during the vacation period and consequently is not entitled to claim unemployment benefits therefor. As we said in *DiMicele v. General Motors Corporation*, 29 *N. J.* 427, 435 (1959): "And no one would

suggest that those receiving vacation pay would also be entitled to unemployment benefits because no service was rendered during the vacation period—in the science of logic and correct reasoning, *reductio ad absurdum.*" To hold otherwise would be completely at variance with the basic purpose of the law to provide some income for the worker earning nothing because he is out of work through no fault or act of his own. A worker on paid vacation, who will return to work at the end of the period, is receiving his full income and so does not meet the fundamental test. *Battaglia v. Board of Review of the Division of Employment Security of the Department of Labor and Industry,* 14 *N. J. Super.* 24, 27 (*App. Div.* 1951). The same rationale dictates that a laid-off individual (where no disability is involved), who is not to return to work but who received a vacation allowance at layoff, should not be eligible for regular unemployment compensation benefits until after the period represented by the payment as wages has expired. *Cf. Battaglia v. Board of Review of the Division of Employment Security of the Department of Labor and Industry, supra.* To avoid any implication to the contrary which might arise by reason of the basis on which the Appellate Division placed its reversal, we choose to ground the result on the pertinent analysis of the statutes and their respective purposes as heretofore expressed.

█ The Appellate Division also took into account a "layoff allowance" or severance pay, amounting to one and one-half weeks wages, which plaintiff likewise received at layoff pursuant to the collective bargaining agreement, finding that such payment did not extend the employment status either. Both parties concede that the very nature of such a payment precludes it from possibly having an extending effect. It is "in essence a form of compensation for the termination of the employment relation" (*Owens v. Press Publishing Co.,* 20 *N. J.* 537, 545 (1956)) and so can play no part in the resolution of the instant issue.

██ The Appellate Division further commented on the fact that the hearing officer, in finding the employment status continued, placed some reliance on the making of deductions by Bakelite from the vacation and severance pay for Butler's share of unemployment and disability insurance premiums based thereon. It felt the circumstance was not controlling and we agree. Assuming the deductions were so made, although the proofs before the hearing officer do not support it, the Division does not here urge the fact in support of its position and, in our opinion, it would not affect the result we have reached.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.