CLYDE M. SULLIVAN, Secretary Department of Employe Trust Funds *Page 353 
Certain municipalities are presently paying and others are contemplating paying employes for unused sick leave, vacation and compensatory time on or just prior to the employe's date of retirement. You therefore ask my opinion as to the effect of such payment upon the starting date of an employe's annuity. Section 41.11 (6), Stats., which determines the starting date of such an annuity reads in part:
"(6) (a) The following prescribed persons shall be entitled to retirement annuities, beginning on the dates hereinafter specified:
1. Any participant who has attained age 55 and who, regardless of cause, is separated and continues to be separated until such annuity is initially approved pursuant to s. 41.04 (1) (b), from all service for every participating municipality for which he has been a participating employe prior to becoming an annuitant and for which such participating employe received compensation. * * *
2. Such annuities shall begin on the date specified by the participant in the written application therefor, provided such date is not prior to the date of separation from the last participating municipality by which such participant was employed, and provided such date is not more than 60 days prior to the date of receipt of such application by the board; * * *."
Under the quoted language of subparagraph (a) 1., a participant is entitled to an annuity if he is "separated until such annuity is initially approved * * * from all service." The date the annuity is to begin is specified by the participant with the primary restriction, "provided such date is not prior to the date of separation from the last participating municipality by which such participant was employed." The question then arises as to whether the payment of money for unused sick leave, vacation and compensatory time at or near the date of separation is "earnings" which must be related to a period of service and thereby extends the time of service before the annuity may commence. I am informed that the Wisconsin Retirement Fund Board has, since its beginning, construed the statutes as requiring that the date of termination of employment for annuity purposes must be *Page 354 
after a period which is equivalent to the amount of service that such final payment would cover were the payment ordinary earnings. The courts give such construction great weight in determining the meaning of the statute. State ex rel. Brunkhorst v. Krenn (1959), 8 Wis.2d 116, 125,98 N.W.2d 394.
It appears that proper interpretation of the statutes depends upon the definition of the terms "separated" and "date of separation" since sec.41.11 (6), Stats., specifies that a participant is not entitled to an annuity unless he is "separated from all service" and that the annuity may not begin "prior to the date of separation." Neither of these terms is defined in sec. 41.02, Stats., the definitions, section of ch. 41, Stats. Separate is defined in Webster's Third New International as:
"3. to part by or as if by a legal separation: b: to sever contractual relations with: discharge [he was separated from the service with the rank of captain — E. J. Kahn] [more than 100 employees have beenseparated from the firm in the past six months] [any student who does not remove his probationary status . . . may be separated from the institution — Bull. of Meharry Med. Coll.] Separation is also defined therein as:
"4. b: Termination of contractual relationship; resignation, discharge [from the service] [from employment] [a serious breach of accepted standards of deportment . . . may be benefitted by loss of social privileges, — College of William Mary Cat.]"
The general rule of statutory construction requires that words be used in their ordinary grammatical sense unless such construction would be obviously repugnant to the intention of the framers or would lead to some inconvenience or absurdity. It appears therefore that under the ordinary meaning of the terms "separated" and "date of separation," a severance or termination of the work relationship was intended before a participant is eligible for an annuity. The work relationship does not necessarily end when the employe terminates his work but may equally cover the entire employer-employe *Page 355 
relationship, the period for which earnings are paid, whether or not actual work is done. Social Security Board v. Nierotko (1945),327 U.S. 358, 90 L. ed. 718, 66 S.Ct. 637. Payment of unused vacation time at or near separation has been held to preclude the recipient from unemployment compensation benefits until after the period represented by the payment as wages has expired even though the court specifically held that such payment did not of itself work to extend the employe relationship. Butler v. Bakelite Co. (1960), 32 N.J. 154, 160 A.2d 36,95 ALR 2d 1373.
There are three conceivable ways in which payments for unused sick leave, vacation and compensatory time could be handled by the Retirement Bureau. The payment could be considered to be a bonus, not includable as "earnings" under sec. 41.02 (18), Stats. A second method would be to consider such payment as "earnings" to be included at the time paid. The third method, the one adopted by the Department of Employe Trust Funds, is to consider such payment as "earnings" and which extend the termination date of the employe for the period of time accounted for by such payment. The last method cited is, in my opinion, most consistent with the intent of the legislature.
The contributions and amount of resulting annuity under the present formula plan annuity system are based mainly upon "earnings." The term "earnings" is defined in sec. 41.02 (18), Stats., in part as:
"(18) `Earnings' means an amount equal to the sum of the total amount of money earned by an employe of a municipality for personal services rendered to or for such municipality and the money value, as determined by rules prescribed by the governing body of the employing municipality, of any board, lodging, fuel, laundry and other allowances provided for such employe in lieu of money, but excluding uniforms purchased directly by the municipality and excluding employer contributions for insurance and retirement. * * *."
Such definition indicates that "earnings" is intended to include more than the periodic salary of the participant and *Page 356 
includes all money earned by the employe for services rendered to the municipality and additionally, the money value of other, in kind, allowances. It is therefore my opinion that "earnings" as defined in sec. 41.02 (18), Stats., includes any payment for unused vacation, sick leave and compensatory time. The question which then remains is whether the subject payment is to be considered as "earnings" on the date paid or whether such payment extends the termination date by the period of time covered by such payment, were such payment the regular wages or salary of the employe.
Under the present formula plan annuity system the monthly payment available to an annuitant is based upon the average monthly earnings received in the five calendar years, during which the participant received the highest total earnings, within the last ten calendar years of employment. A specified percentage is applied to this "formula final rate of earnings" to determine the proper monthly payment to an annuitant. See secs. 41.02 (21) and 41.11 (6) (c), Stats. The effect therefore of a lump sum payment for unused vacation, sick leave and compensatory time at time of retirement results in a substantially higher annuity than was contemplated when the formula plan was adopted by the legislature. State employe participants under the plan are not paid for unused vacation, sick leave and compensatory time upon retiring. Sec. 16.275, Stats. You further inform me that at the time the formula plan was instituted by the legislature, most municipalities made no payment upon retirement for unused sick leave, vacation or compensatory time. It appears, therefore, that the legislature when instituting the formula plan did not consider the subject payments. I include the following assumed fact situation, which you have provided to me, to show the substantial increase in benefits which would result if the subject payment is considered to be earnings accountable only to the date upon which paid. Assume the following:
1. Employe stops actual work on 12/31/70, at age 65, after 35 years of creditable service.
2. The employe is eligible for payment for 6 months of accumulated sick leave. *Page 357 
3. His monthly earnings have been as follows:
 1970 $1,000 1969 950 1968 900 1967 850 1966 800
The essential facts under present procedures, wherein the termination date is extended, as compared to the facts under a procedure where the subject payment is considered to be earnings for the date paid, would be
 (A) (B) Present procedure Procedure under Termination date which payment Extended is considered earnings Item on date paid
1. Effective date of annuity ........ 7/1/71 1/1/71 2. Years of creditable service ........ 35-1/2 35 3. Formula final rate of earnings ...... $920.00 $1,000 4. Formula annuity (Opt. 1) ....... $327.03 $358.40
Thus under the (B) procedure the annuity would be about $31.37 per month higher; the employe would contribute about $150 more in total than under the (A) procedure, which would cover about $1.08 of the increased annuity, leaving about $30.29 of the increased annuity to be paid for by the employer at a total cost of about $3,922.00. On the other hand, using the same assumptions as above, but applying them to an employe who had no accumulation of sick leave at 12/31/70, the results would be as follows:
1. Effective date of annuity. 1/1/71
2. Years of creditable service, 35
3. Formula final rate of earnings, $900
4. Formula annuity (Opt. 1) $313.43 *Page 358 
Thus, under present procedure (A), the employe with an accumulation of sick leave in the above example does receive an improved annuity based on the sick leave payments he receives. He will not, however, receive the substantial increase in his annuity which would arise under the (B) procedure.
The general rule of statutory construction is that a statute should not be given a construction which results in unreasonableness if the statute is open to any other construction. Williams v. City of Madison (1962),15 Wis.2d 430, 439, 113 N.W.2d 395. Consideration of the situation as shown in the example above indicates that substantially higher monthly payments under the formula plan, not contemplated by the legislature, could result from considering the subject payment as earnings on the date paid. I conclude, therefore, that the procedure presently followed by the Wisconsin Retirement Fund Board is the most reasonable interpretation of the statutes and suggest that such procedure be continued unless or until changed by the legislature.
RWW:WMS