NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3209-11T1

GINA PARASCANDOLO,

     Appellant,

v.

DEPARTMENT OF LABOR,
BOARD OF REVIEW, BRICK
TOWNSHIP BOARD OF
EDUCATION and VINNY'S
KING PIZZA,

     Respondents.

> **APPROVED FOR PUBLICATION**
>
> **May 22, 2014**
>
> **APPELLATE DIVISION**

---

Submitted October 16, 2013 — Decided May 22, 2014

Before Judges Fisher, Espinosa and Koblitz.

On appeal from the Board of Review, Department of Labor, Docket No. 333,049.

Pezzano Mickey & Bornstein LLP, attorneys for appellant (Lisa Pezzano Mickey, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent Board of Review (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Alan C. Stephens, Deputy Attorney General, on the brief).

Berry, Sahradnik, Kotzas & Benson, attorneys for respondent Brick Township Board of Education, join in the brief of respondent Board of Review.

Respondent Vinny's King Pizza has not filed a brief.

The opinion of the court was delivered by

ESPINOSA, J.A.D.

In enacting the Temporary Disability Benefits Law (TDBL), N.J.S.A. 43:21-25 to -66, the Legislature sought to provide relief to workers who suffered involuntary unemployment and loss of wages due to illness or injury that was not covered by the Workers' Compensation Act (WCA), N.J.S.A. 34:15-1 to -128.5. The TDBL was to "fill the gap" in existing employee welfare legislation and expressly provided that its benefits should not duplicate benefits provided under the WCA. See N.J.S.A. 43:21-26, -30. Because the TDBL was generally applied to situations involving one employer, the legal issue that typically arose thereafter involved an "either/or" analysis; the injury was either covered by the WCA or the TDBL but not both.

We first considered the interplay of the two statutes in a case where the worker had two employers in In re Scott, 321 N.J. Super. 60 (App. Div. 1999), aff'd, 162 N.J. 571 (2000). The worker was injured at his part-time job and we determined that the receipt of temporary workers compensation benefits (TWCB) from that employer did not bar the receipt of temporary disability benefits (TDB) for the loss of wages from his primary employer. Id. at 65-66. This appeal requires us to examine the interplay of the two statutes once again to determine their

application when only one of two employers is a "covered employer" under the TDBL and whether the right to subrogation applies under such circumstances even though there was no duplication of benefits.

Appellant Gina Parascandolo held two part-time jobs when she was injured in the course of her employment at one of the jobs. She received TWCB from the employer where she was injured, a public employer that did not participate in the State Disability Benefits Fund, and TDB through her other employment. Although she received both forms of benefits, she did not receive duplicate benefits. She appeals from a final agency decision of the Department of Labor, Board of Review (the Board), that held appellant was obligated to reimburse the Division of Temporary Disability Insurance (the Division) because she received both TDB and TWCB for the same injury. For the reasons that follow, we reverse.

I

We begin by briefly reviewing the history of employee welfare legislation, which began with the enactment of the WCA. Originally enacted in 1911, the WCA represented a "'historic trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered injuries

by accident arising out of and in the course of employment.'" Van Dunk v. Reckson Assoc. Realty Corp., 210 N.J. 449, 458-59 (2012) (quoting Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174 (1985)). Compensation under the WCA is limited to injuries suffered "in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer." N.J.S.A. 34:15-36; see Hersh v. Cnty. of Morris, 217 N.J. 236, 249-50 (2014).

The next development came in 1936 with the passage of the Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -24.30. See Butler v. Bakelite Co., 32 N.J. 154, 160 (1960). From the outset, the UCL was recognized as remedial legislation, its "primary objective" being "to provide a cushion for the workers of New Jersey 'against the shocks and rigors' of unemployment." Philadelphia Newspapers, Inc. v. Bd. of Review, 397 N.J. Super. 309, 318 (App. Div. 2007) (internal citation omitted), certif. denied, 195 N.J. 420 (2008). Accordingly, the provisions of the UCL are liberally construed, even permitting a statutory employer-employee relationship, the "center of the UCL," to be found when the facts might not satisfy common law principles. Id. at 318-19.

However, the worker who suffered involuntary unemployment as the result of a disabling accident or illness that did not

arise in the course of employment received no relief from these statutes. See Butler, supra, 32 N.J. at 160-62; Janovsky v. Am. Motorists Ins. Co., 11 N.J. 1, 4 (1952). In enacting the TDBL in 1948, the Legislature recognized the need

> to fill the gap in existing provisions for protection against the loss of earnings caused by involuntary unemployment, by extending such protection to meet the hazard of earnings loss due to inability to work caused by nonoccupational sickness, accidents, or other disabilities of workers.
>
> [N.J.S.A. 43:21-26 (emphasis added).]

The Legislature declared that the TDBL was remedial legislation to be liberally construed. Ibid. The Legislature also clearly expressed its intent that, while the TDBL was to fill a gap in the protections afforded by the WCA and the UCL, it would not duplicate the benefits provided by those statutes. The TDBL thus allows "the payment of reasonable cash benefits to eligible individuals who are subject to accident or illness which is not compensable under the workers' compensation law." Ibid. (emphasis added). With certain specified exceptions, N.J.S.A. 43:21-30(b) explicitly bars the duplication of benefits paid under the WCA:

> No benefits shall be required or paid under this act for any period with respect to which benefits . . . are paid or payable on account of the disability of the covered individual under any workers' compensation law . . . .

Thereafter, the legal issue that was typically raised was which of the statutes applied to provide relief to the worker who suffered a loss of wages due to involuntary unemployment. See, e.g., Janovsky, supra, 11 N.J. at 3-5; see also Butler, supra, 32 N.J. at 157. As the Court explained,

> Where an employee is disabled by accident or illness he will generally be entitled to benefits under either the compensation law or the benefits law, but not under both. If liability under the compensation law is clear, payment will be made thereunder, and if absence of liability under that statute is clear, payment will be made under the benefits law.
>
> [Janovsky, supra, 11 N.J. at 5 (emphasis added).]

A "twilight zone" was recognized for cases when "liability under the compensation law [is] doubtful and dependent on the outcome of contested proceedings." Ibid. In such cases, the TDBL provides benefits "to help tide the worker over during his inability to work . . . with full reimbursement from any award subsequently rendered in the compensation proceeding." Ibid.; N.J.S.A. 43:21-30(b)(1), (2).

The application of this nonduplication requirement is straightforward in cases where the employee holds one job. See Sperling v. Bd. of Review, 301 N.J. Super. 1, 5 (App. Div. 1997), aff'd, 156 N.J. 466 (1998). When an employee has only

one job and suffers an injury "arising out of and in the course of his employment," Janovsky, supra, 11 N.J. at 4, it is clear the injury is compensable under the WCA and, therefore, any TDB for the same injury would duplicate those benefits. It was within that factual context that we held in Sperling that an individual who obtains workers' compensation benefits by settlement "may not obtain temporary disability benefits for the same injury." Sperling, supra, 301 N.J. Super. at 5 (emphasis added). However, the interplay between the two statutes requires closer scrutiny when, as here, the employee has more than one job.

In 1999, we decided Scott, which, we recognized, was unlike cases such as Janovsky and Sperling that dealt "with the traditional situation of a worker who has one job and is injured in circumstances not covered, or clearly covered, by workers' compensation." Scott, supra, 321 N.J. Super. at 65. In Scott, the employee held both full-time employment, with Konica Business Machines, and a part-time job, with Holiday Bowl. He was injured "in the course of his employment" at his part-time job. Id. at 62-63. He obtained workers' compensation for the injury calculated solely on his earnings from Holiday Bowl. Ibid. As a result, the compensation benefits he received were less than he would have received if the accident occurred at

Konica.  Id. at 64.  His application for TDB based on his inability to work at his full-time employment was denied by a private plan hearing officer.  Id. at 63.  On appeal, Konica argued that no TDB should be paid because "such benefits are payable only for injuries 'not compensable under the workers' compensation law,' N.J.S.A. 43:21-29," and argued further that, because Scott obtained workers' compensation from Holiday Bowl, N.J.S.A. 43:21-29 and -30 prohibited the payment of any TDB to him.  Scott, supra, 321 N.J. Super. at 63-64.

We acknowledged that the argument had "some literal appeal" but rejected the notion that the Legislature intended a blanket prohibition against the payment of any TDB:

> [W]e do not interpret those provisions to reflect a legislative intention to deny all temporary disability benefits to a disabled full-time worker, merely because he receives a workers' compensation award as a result of an accident "arising out and in the course of" unrelated part-time employment, when the workers' compensation benefits he receives are calculated solely on the basis of his earnings with that employer and are far less than would have been payable had the accident occurred on the full-time job.
>
> [Id. at 64.]

Noting the remedial nature of the TDBL, N.J.S.A. 43:21-26, we found

> neither logical support nor empirical evidence that the Legislature intended to deprive a worker who pays deductions for

temporary disability benefits from obtaining those benefits to compensate him for the loss of income at his full-time employment merely because his injury occurred at a second or part-time job taken to supplement that income.

[Id. at 65.]

We observed, "The employee should not be worse off because the accident, not related to his full-time or prime employment and therefore otherwise entitling him to temporary disability benefits through that employer, happened to occur at an unrelated part-time work site." Id. at 66.

We remanded the case to the Department of Labor for further proceedings consistent with our opinion. Citing Justice Stein's concurring opinion in Sperling v. Bd. of Review, 156 N.J. 466, 468 (1998), we directed the Department of Labor to examine "whether the disability carrier should be entitled to a set-off 'to the extent of the' temporary workers' benefits obtained through workers' compensation . . . or in some other amount" and the manner in which such a set-off would be undertaken. Scott, supra, 321 N.J. Super. at 66-67 (emphasis added). Significantly for the purposes of this appeal, both employers in Scott were "covered employers" under the TDBL, and we did not establish any procedure to be followed regarding a set-off. Rather, we stated the set-off argument "must be examined in light of our conclusion that the statutory interplay itself must be examined

separately with respect to each job." <u>Id.</u> at 66 (emphasis added). And, we explicitly adopted the point emphasized by Justice O'Hern in his separate opinion in <u>Sperling</u>:

> It is quite obvious to even the most casual reader of its title that <u>N.J.S.A.</u> 43:21-30 <u>intends to avoid double recovery, not full recovery</u>. Although no specific offset provision exists, the purpose of the law demonstrates that recovery for temporary disability and workers' comp is not mutually exclusive. The title to <u>N.J.S.A.</u> 43:21-30 is "Nonduplication of benefits," not "Election of benefits."
>
> [<u>Sperling</u>, <u>supra</u>, 156 <u>N.J.</u> at 473 (O'Hern, J., concurring and dissenting).]

Our opinion thus moved the interpretation of the nonduplication provisions of the TDBL away from a literal approach that would permit language designed to preclude "double recovery" to unfairly limit a worker's benefits based upon chance circumstances when a worker has more than one job. As we emphasized, the interplay between the WCA and the TDBL "must be examined separately with respect to each job." <u>Scott</u>, <u>supra</u>, 321 <u>N.J. Super.</u> at 66. As part of that examination, due consideration should be given to the employee's payments for TDB and the principle that it is only double recovery, not full recovery, of benefits that is prohibited. Our decision prompted both legislative and regulatory action.

N.J.S.A. 43:21-30(b)(3) was intended to codify Scott by establishing a set-off procedure:

> If there has been a settlement of a workers' compensation claim pursuant to [N.J.S.A.] 34:15-20 in an amount less than that to which the claimant would otherwise be entitled as disability benefits under the [TDBL] for the same illness or injury, the claimant shall be entitled to disability benefits for the period of disability, reduced by the amount from the settlement received by the claimant under [N.J.S.A.] 34:15-20.

The Department of Labor promulgated N.J.A.C. 12:18-1.5 to "conform[] the regulations to the Scott decision which addressed the issue of the offset by the Division of Temporary Disability Insurance of temporary workers' compensation benefits." 33 N.J.R. 3622(a) (Oct. 15, 2001).[1]

The Department's statement regarding the proposed rule explained that it had been "rewritten to ensure that the Division or the private plan retains the right of subrogation" to all aspects of workers' compensation awards, as upheld in Janovsky, supra, "thereby insuring the integrity of the Temporary Disability Trust Fund . . . . Specifically, to permit a claimant to keep disability benefits and temporary workers'

---

[1] The Division of Temporary Disability's right of subrogation of duplicate workers' compensation benefits was previously established by N.J.S.A. 34:15-57.1.

<u>compensation benefits would result in a windfall not</u>

<u>contemplated by law</u>." <u>Ibid.</u> (emphasis added). Addressing the

concern we raised in <u>Scott</u>, the Department stated the rule would

> ensure that an employee who works more than one job, who is injured during the course of his or her duties with one of his or her employers, and who seeks to collect disability benefits, <u>is not worse off merely because his or her injury or illness occurred at a second job</u> taken to supplement his or her income. In other words, the proposed new rule <u>seeks to ensure that injured workers in New Jersey receive all of the benefits to which they are entitled by law</u>.
>
> [<u>Ibid.</u> (emphasis added).]

<u>N.J.A.C.</u> 12:18-1.5 states,

> (a) If a covered individual with more than one employer receives temporary workers' compensation benefits for an injury or illness incurred at one place of employment and that individual files a claim for New Jersey temporary disability benefits as a result of the same injury or illness on the basis of his or her employment with the other employer(s), those benefits are payable under the New Jersey State plan or an approved private plan provided that:
>
> 1. The claimant otherwise meets the eligibility criteria for temporary disability benefits in accordance with [the TDBL];
>
> 2. Wages from all covered employers are used to calculate the temporary disability insurance weekly benefit rate . . . ;
>
> 3. The temporary disability insurance weekly benefit rate is reduced by the

temporary workers' compensation weekly benefit rate;

4. The claimant receives the temporary disability insurance benefits at the adjusted rate; and

5. Any such reduction in the temporary disability insurance weekly benefit rate shall also reduce the maximum total benefits payable during the period of disability.

## II

We now turn to the facts of this case.

Appellant had two part-time jobs. At the time of her injury, her major source of income was her part-time job with Vinny's Pizza, where she earned $500 per week. She was also employed, part-time, as a cafeteria worker by the Brick Township Board of Education (BOE), earning approximately $215 per week. She tore the rotator cuff on her right shoulder after picking up a heavy tray at BOE and eventually required surgery. She was unable to work for either employer for the period from January 20, 2009, through May 1, 2009.

The TDBL established an entitlement program funded out of contributions paid by covered employers and employees, N.J.S.A. 43:21-46; N.J.S.A. 43:21-7(d)(1)(G); N.J.S.A. 43:21-7(e). Only one of appellant's employers, Vinny's Pizza, was a "covered employer" under the TDBL. N.J.S.A. 43:21-27(a)(1) defines a "covered employer" as "any . . . employer subject to the

'unemployment compensation law' . . . except the State, its political subdivisions, and any instrumentality of the State unless such governmental entity elects to become a covered employer." Because BOE did not elect to participate in the TDB program, it is not a "covered employer." It did not contribute to the State Disability Benefits Fund and no contributions toward the fund were taken from the wages appellant earned from BOE.

Through her employment with Vinny's, appellant contributed to the State Disability Benefits Fund as required by N.J.S.A. 43:21-46 and N.J.S.A. 43:21-7(d)(1)(G). Accordingly, when appellant became unable to work due to her injury, she filed a claim for TDB for the loss of her income from Vinny's Pizza in January 2009.[2] Following instructions given her by the Division's customer service representative, appellant submitted a claim form that stated she had not been injured during the course of her employment at Vinny's. However, she also supplied a certification from BOE, which stated her injury was work-related and that a workers' compensation claim was anticipated.

N.J.S.A. 43:21-40 provides in pertinent part that the amount of an individual's weekly TDB "shall be two-thirds of his

---

[2] Appellant identified her employer as "Vinnie's Pizza" on her claim form. Since all pleadings refer to the employer as "Vinny's Pizza," we use that spelling.

average weekly wage, subject to a maximum of 53% of the Statewide average weekly remuneration paid to workers by employers."  The definition of "average weekly wage"[3] contained in N.J.S.A. 43:21-27(j) is explicitly linked to the amount of

---

[3]  As applied to appellant's claim for TDB, N.J.S.A. 43:21-27(j) provides, in pertinent part:

> (1) "Average weekly wage" means the amount derived by dividing a covered individual's total wages earned from the individual's most recent covered employer during the base weeks . . . by the number of such base weeks.

> (2) If the computation in paragraph (1) . . . yields a result which is less than the individual's average weekly earnings in employment with all covered employers during the base weeks . . . then the average weekly wage shall be computed on the basis of earnings from all covered employers during the base weeks . . . .

> (3) For periods of disability commencing on or after July 1, 2009, if the computations in paragraphs (1) and (2) . . . both yield a result which is less than the individual's average weekly earnings in employment with all covered employers during the base weeks in the 26 calendar weeks immediately preceding the week in which the period of disability commenced, then the average weekly wage shall, upon a written request . . . be computed by the department on the basis of earnings from all covered employers of the individual during the base weeks in those 26 calendar weeks . . . .

> [Emphasis added.]

A-3209-11T1

wages a "covered individual" earns from a "covered employer." Similarly, the definition of "wages" to be used in interpreting the TDBL is "all compensation payable by <u>covered employers</u> to <u>covered individuals</u> for personal services . . . ." <u>N.J.S.A.</u> 43:21-27(h) (emphasis added).

Because BOE was not a "covered employer," only the wages earned from Vinny's Pizza were used to calculate appellant's weekly entitlement under the State Disability program. Consistent with the weekly benefit rate authorized by <u>N.J.S.A.</u> 43:21-40, appellant received weekly TDB of $333 per week (minus FICA), an amount equal to two-thirds of her average weekly wage at Vinny's, for the period from January 20, 2009, to May 1, 2009.

In April 2009, appellant filed a claim petition with the Division of Workers' Compensation for the injury she sustained at BOE. Her claim for lost wages was based only on the gross weekly wages she received from BOE, which she listed as $215. BOE did not dispute her claim.

In September 2010, the Division of Temporary Disability Insurance filed a Notice of Lien pursuant to <u>N.J.A.C.</u> 12:18-1.5 with the Division of Workers' Compensation in the amount of $4,788.19 on the claim pending before the Division of Workers'

Compensation. The amount of the lien represented the full amount of TDB appellant had received.

That same month, appellant filed an appeal from the lien, arguing she had not received a duplicate payment of benefits for her injury. On April 5, 2011, the Division of Temporary Disability reduced the lien to $2,848.23 to reflect the difference between appellant's weekly benefit rate entitlement to TDB and her weekly entitlement to TWCB. The net effect was to reduce appellant's weekly TDB rate from $333, the equivalent of two-thirds of her average weekly wage at Vinny's, to $135.

On March 31, 2011, an Order Approving Settlement was filed in the Division of Workers' Compensation. Appellant and BOE stipulated that appellant had "an admittedly compensable injury" and agreed upon a 22 1/2% partial total permanent disability award to appellant in the total amount of $23,271. The order approving settlement listed her weekly wages as "$350 (reconstruct[])" and the TWCB rate as "$198.00/$245.00." She received $2,941.68 in TWCB. Appellant agreed to pay the revised lien, reserving her right to appeal the assertion of the lien.

Appellant satisfied the lien before her appeal was conducted telephonically by an Appeals Examiner in June 2011. Testimony was taken from appellant and Robert Goyne, a

supervisor in the Division of Temporary Disability Insurance's claims intake section.

Goyne maintained that, pursuant to our decision in Scott, and N.J.A.C. 12:18-1.5, a lien was required to reduce appellant's TDB by the amount of workers' compensation paid. According to Goyne, it was immaterial that BOE was not a covered employer and that appellant's TDB was based solely upon her wages from her only covered employer. He said that, "following the Scott procedure," when there are two employers, one of whom is paying workers' compensation benefits, "the [TDB] benefit must be reduced by the amount of the workers' compensation if the weekly benefit rate is higher." Goyne testified that the lien of $2,848.23 represented the difference between the benefits "exactly as the Scott procedure stated."

The Appeal Tribunal concluded that the lien was properly imposed pursuant to N.J.A.C. 12:18-1.5, stating,

> The evidence presented indicates that the claimant received Workers' Compensation benefits and State Plan Disability benefits for the same disability for the same period of time. In this case, the claimant's monetary entitlement to State Plan Disability benefits was based on her wages earned solely with [Vinny's Pizza] since her wages with [BOE] were not covered under the State Plan Disability Law in accordance with N.J.S.A. 43:21-27(a)(1). Her weekly benefit rate of $333.00 is therefore considered appropriate in accordance with N.J.A.C.

> 12:18-1.5 since the calculation was based on wages earned from all covered employers.
>
> . . . [T]he claimant's entitlement to an adjusted rate of $135.00 is also considered appropriate under N.J.A.C. 12:18-1.5 since she received Workers' Compensation benefits in the amount of $198.00 per week as a result of the same injury or illness. Therefore, the claimant is liable for refund in the amount of $2,848.23 for State Plan Disability benefits paid from 1/20/2009 through 5/01/2009.

Appellant timely filed an appeal from the decision of the Appeal Tribunal to the Board of Review, which affirmed the decision of the Appeal Tribunal.

### III

Appellant advances several arguments to support her contention that the lien was improperly asserted here. She argues that, because she was not entitled to receive workers' compensation benefits for her loss of income from Vinny's, the Division of Temporary Disability Insurance could not properly assert a lien on her TWCB for the TDB she received based upon her wages from Vinny's. She argues further that her TDB weekly benefit should not have been reduced by the TWCB she received based on her wages from BOE because those wages were not included in calculating her TDB rate.[4]

---

[4] In addition, appellant argues that her receipt of TWCB did not disqualify her from receiving TDB for the income she lost from

(continued)

The Board counters that, pursuant to N.J.S.A. 43:21-30 and N.J.A.C. 12:18-1.5, appellant was paid TDB she was not entitled to receive. Because both TDB and TWCB were paid for "the same injury," the Board argues it correctly determined that a reduction of appellant's TDB was required and that she is liable for a partial refund of benefits pursuant to N.J.S.A. 43:21-55.1.

We recognize that our review of administrative agency decisions is "limited." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). An appellate court will not upset the ultimate determination of an agency unless shown "that it was arbitrary, capricious or unreasonable, that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the act" governing the agency. Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963); see also Brady, supra, 152 N.J. at 210. However, the central issue in this appeal concerns the interpretation of our decision in Scott and the statute and regulation that were intended to codify and implement it, N.J.S.A. 43:21-30(b)(3) and N.J.A.C. 12:18-1.5. While we

(continued)
Vinny's. The Board does not contend that she was disqualified from receiving TDB, only that the right to subrogation applied to the TDB she received. Finally, she argues that the Division's right to subrogation is limited to TDB payable under the WCA, N.J.S.A. 34:15-12, and does not extend to permanency benefits. We need not address this issue.

respect an agency's expertise, the interpretation of statutes and caselaw is ultimately a judicial, rather than an administrative, function. We are therefore not bound by the agency's interpretation. Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973); see also Shim v. Rutgers, 191 N.J. 374, 384 (2007). "Although judicial review of administrative actions is limited, courts will intervene when 'an agency action is clearly inconsistent with its statutory mission or other state policy.'" N.J. Ass'n of Realtors v. N.J. Dep't of Envtl. Prot., 367 N.J. Super. 154, 160 (App. Div. 2004) (quoting In re Musick, 143 N.J. 206, 216 (1996)).

As we have noted, the Department expressly stated that N.J.A.C. 12:18-1.5 was proposed to conform the regulations to our decision in Scott. In its statement, the Department said that the subrogation procedure set forth in the regulation would preserve the integrity of the Fund and insure a full recovery of benefits by the worker while precluding a windfall to the worker that was not contemplated by the Legislature. These objectives are fully compatible with Scott.

However, in Scott, we also stated that, when the injured worker has more than one employer, the interplay of the TDBL and WCA must be viewed separately with respect to each job. And, the worker should not be worse off, i.e., denied full recovery

of benefits, because the injury occurred at one workplace rather than another.

Viewing each job separately here, the injury occurred "in the course of employment when" appellant was "engaged in the direct performance of duties assigned or directed by" BOE. N.J.S.A. 34:15-36.  Therefore, her claim for lost wages under the WCA was limited to the wages earned at BOE.

The loss of appellant's substantially higher wages from Vinny's was "not compensable under the [WCA]," N.J.S.A. 43:21-26, and fell within the very gap the TDBL was designed to fill. The only remedy available to cushion her against the loss of those wages was the TDB for which she was eligible pursuant to N.J.S.A. 43:21-29(a).[5]  Deductions were taken from the wages she earned at Vinny's for the Fund, and her "full recovery" of TDB

---

[5]  Curiously, the Board does not dispute appellant's eligibility for TDB under this statute, which provides:

> In the case of the disability of a covered individual, disability shall be compensable . . . if the disability is the result of the covered individual suffering an accident or sickness not arising out of and in the course of the individual's employment or if so arising not compensable under the workers' compensation law, . . . and resulting in the individual's total inability to perform the duties of employment.

was two-thirds of her wages from Vinny's, or $333 per week, in accordance with N.J.S.A. 43:21-40.

The Board has failed to show that appellant's receipt of the sum paid to compensate her for the wages she lost from Vinny's was a "windfall" to appellant. Still, the Board maintains that appellant's receipt of the full amount of TDB due her based solely on her wages from Vinny's must be reduced pursuant to N.J.S.A. 43:21-30(b)(3) and N.J.A.C. 12:18-1.5.

The authorities relied upon do not clearly support the interpretation adopted by the Board, i.e., that the fact only one of a worker's employers is a "covered employer" under the TDBL has no impact on the Division's right to subrogation.

N.J.S.A. 43:21-30(b)(3) describes the worker's entitlement to disability benefits and a subsequent reduction in benefits in a specific scenario: when the workers' compensation claim has been settled for less than the applicable TDB "for the same illness or injury." Given the fact that this statute was enacted in response to Scott, and its reference to the receipt of both TDB and TWCB, it can be assumed that employment by multiple employers was contemplated. Notably, Scott did not concern a situation in which one employer was a "covered employer" under the TDBL and the other was not and the statute is silent on that point.

On its face, N.J.A.C. 12:18-1.5 is similarly undiscriminating on this issue. In the first instance, it refers to

> a covered individual with more than one employer [who] receives temporary workers' compensation benefits for an injury or illness incurred at one place of employment and . . . files a claim for New Jersey temporary disability benefits as a result of the same injury or illness on the basis of his or her employment with the other employer(s).
>
> [N.J.A.C. 12:18-1.5(a) (emphasis added).]

The disparity between identifying the employee as a "covered individual" and using the term "employer," rather than "covered employer," suggests that the status of the employer as "covered" or not, is immaterial to the application of the subrogation provision. This is the interpretation applied by the Board.

However, review of the definitions section for the TDBL reveals that such an interpretation is erroneous. N.J.A.C. 12:18-1.1 states that "'Employer' means a covered employer as defined in N.J.S.A. 43:21-27(a)." (Emphasis added). Therefore, when the literal language of the subrogation provision is altered to reflect the actual meaning of the words, the right to

subrogation is clearly limited to circumstances where the injured worker has more than one <u>covered</u> employer:[6]

> (a) If a covered individual with more than one [covered] employer receives temporary workers' compensation benefits for an injury or illness incurred at one place of employment and that individual files a claim for New Jersey temporary disability benefits as a result of the same injury or illness on the basis of his or her employment with the other [covered] employer(s), those benefits are payable under the New Jersey State plan or an approved private plan provided that:
>
> . . . .
>
> 2. Wages from all covered employers are used to calculate the temporary disability insurance weekly benefit rate . . . ;
>
> 3. The temporary disability insurance weekly benefit rate is reduced by the temporary workers' compensation weekly benefit rate;
>
> 4. The claimant receives the temporary disability insurance benefits at the adjusted rate; and
>
> 5. Any such reduction in the temporary disability insurance weekly benefit rate shall also reduce the maximum total benefits payable during the period of disability.
>
> [<u>N.J.A.C.</u> 12:18-1.5]

In sum, we conclude that the Board's decision was based upon an erroneous interpretation of <u>N.J.S.A.</u> 43:21-30(b)(3) and

---

[6] This interpretation is consistent with the regulation regarding "Concurrent coverage," <u>N.J.A.C.</u> 12:18-3.5.

N.J.A.C. 12:18-1.5 that undermined the policy underlying the TDBL by denying appellant the full recovery of benefits due her when there was neither a duplication of benefits nor a windfall to her. We discern no legislative mandate to penalize appellant's diligence in holding two jobs by reducing the TDB she was entitled to receive from Vinny's. The Board's decision was therefore arbitrary, capricious, and unreasonable, requiring reversal. See Russo v. Bd. of Trs., Police and Firemen's Ret. Sys., 206 N.J. 14, 33 (2011) (reversing an administrative decision where the board's interpretation of a legal standard was held to be "inaccurate, . . . contrary to the legislative objectives that standard embodies, and . . . clearly erroneous as a matter of law").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION