**G. H. BASS AND CO.**

**v.**

**MAINE EMPLOYMENT SECURITY
COMMISSION et al.**

Supreme Judicial Court of Maine.

Feb. 19, 1969.

Skelton, Taintor & Abbott, by, Charles H. Abbott, Lewiston, for plaintiff.

Frank A. Farrington, Asst. Atty. Gen., Augusta, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

Plaintiff-employer appeals under 26 M. R.S.A. § 1194, sub. 9 from a decree of the Superior Court sustaining the decision of the Maine Employment Security Commission awarding the two individual defendants partial benefits for the week ending November 26, 1966.

Since the plaintiff has conceded in its brief and at oral argument that the evidence in the record supports the Commission finding of the existence of good cause for the employees' late filing of their claims, we shall direct our attention from the procedural to the substantive issue raised by the appellant.

The individual defendants were regular employees of the plaintiff corporation and had worked their full time for the first 3 working days of the week ending November 26, 1966. The plaintiff's plant was shut down for the Thanksgiving holiday weekend. In lieu of a written collective bargaining agreement between the employer and its employees or any representative agency, the plaintiff corporation, at the time of hiring of both defendants, had in effect a fringe-benefits policy providing that Thanksgiving day and the next day, Friday, were to be work holidays with holiday pay based on each employee's average hourly earnings. Under its terms employees of less than 60 days standing were ineligible to receive holiday pay. This policy was posted in the plant and both defendants accepted and received as holiday pay for Thursday and Friday of the reference week the sum of $23.20 each. With her earned wages of $34.08 for the first 3 full days of work, defendant Tilton received for the week

ending November 26, 1966 a total amount of $57.28, while defendant Sawtelle's earned wages of $31.15 for her first 3 full days of work entitled her altogether to $54.35. Tilton's weekly benefit amount, for purposes of partial benefit computation under the Unemployment Security Law, admittedly was $35.00, while that of Sawtelle was $33.00.

The Commission by majority vote in each case ruled and its ruling was sustained by the Court below, that

> "during week ending November 26, 1966, the claimant was able and available for full-time work, but worked only three days of a normal five-day work week and earned less than $5.00 in excess of her weekly benefit amount.
>
> * * * * * *
>
> It is the opinion of the majority of the Commission that claimant's unemployment was caused by lack of suitable work with her regular employer * * *."

As a result of the Commission's decision as approved by the Justice below, partial benefits were allowed to each claimant from November 20, 1966, such benefits to be charged to the experience rating record of the plaintiff-employer. The plaintiff has appealed to this Court for relief.

The facts, as previously related, are not in dispute. Solution of the issue rests in the proper interpretation and construction of our Unemployment Security Law. 26 M.R.S.A. § 1041 et seq. The pertinent provisions of the Act are as follows:

26 M.R.S.A. § 1043 sub. 17, par. B.

> "17. *Unemployment, total and partial.* 'Unemployment, total and partial' means:
>
> * * * * * *
>
> "B. An individual shall be deemed 'partially unemployed' *in any week of less than full-time work* if his wages payable from any source for such week are not $5 or more in excess of the weekly benefit amount he would be entitled to re-

ceive if totally unemployed and eligible, *except that remuneration payable or received as holiday pay shall not be deemed wages for the purpose of this subsection* * * *" [Emphasis supplied]

26 M.R.S.A. § 1191, sub. 3

> "3. *Weekly benefit for partial unemployment.* On and after April 1, 1966, each eligible individual *who is partially unemployed in any week* shall be paid with respect to such week a partial benefit in an amount equal to his weekly benefit amount less that part of his earnings paid or payable to him with respect to such week which is in excess of $10 plus any fraction of a dollar, *except that remuneration payable or received as holiday pay shall not be deemed wages for the purpose of this subsection* * * *" [Emphasis supplied]

Claimants contend that a normal 5 day working week, when cut down by one or more holidays, is a week of less than full-time work under the Act, and that they were partially unemployed within the meaning of the Unemployment Security Law during the week ending November 26, 1966, even though they were paid and accepted holiday pay for Thursday and Friday of that week. The appellant disputes this and further contends that if holidays are to be reckoned as covered periods of unemployment, then the statute should be limited to legal holidays and pay for a work holiday which is not also a legal holiday should not be interpreted as holiday pay within the terms of the statute. This latter contention, if sustained, would cause both claimants to be ineligible for partial unemployment benefits.

We are not impressed with appellant's contention that remuneration received by the claimants as holiday pay for Friday should be deemed wages for the purpose of sections 1043, sub. 17, par. B, and 1191, sub. 3 of 26 M.R.S.A., while similar reward for Thanksgiving Day, Thursday, should not be so treated. True, our statutes decree certain days in the year

including Thanksgiving Day as business holidays when it is illegal to keep open certain businesses such as the plaintiff's. 17 M.R.S.A. § 3204. Thanksgiving Day is also a bank holiday, 9 M.R.S.A. § 131, a school holiday, 20 M.R.S.A. § 801, and a court holiday, 4 M.R.S.A. § 1051. A holiday, according to Webster's New International Dictionary, is 1) a consecrated day; a religious anniversary or festival; 2) *any day of exemption from labor or work*; a day of amusement or recreation; 3) (Law) a day fixed by law for the suspension of business in whole or in part; a legal holiday. Title 26 of our revised statutes is the legislative chart regulating the relations between labor and industry and its precepts run a broad range of duties, rights and remedies, in the field of health and safety, conditions of employment, minimum wages, mediation and arbitration including specific treatment of arbitration pursuant to collective bargaining contracts, and social security insurance against unemployment. Though it set aside certain holidays where neither the worker could demand, nor industry could compel, work, the Legislature left them free to act for themselves in the area of holiday pay. Unless there is a collective bargaining agreement providing for payment of wages to workers while on holiday leave, or unless the employer gratuitously grants the same, laborers must enjoy their legally forced holiday vacation without pay. It is a matter of common knowledge that holiday pay was born out of collective bargaining agreements. Such legislation providing that "remuneration payable or received as holiday pay shall not be deemed wages" must be interpreted and construed in the factual setting in which holiday pay exists, to wit, where a collective bargaining agreement or employer policy provides for the same. It is only by virtue of such labor practice that remuneration is payable by the employer and received by the employee as holiday pay under the very terms of the statute. Failure of the Legislature to circumscribe more specifically the terms "holiday pay" reveals an intendment to include any remuneration understood between the parties to be payable and received as holiday pay.

The issue before us remains, whether the respective claimants were "partially unemployed" under 26 M.R.S.A., § 1043, sub. 17, par B. Was the week ending November 26, 1966 a week "of less than full-time work" in which the claimants' wages payable from any source for such week were not $5 or more in excess of the weekly benefit amount they would be entitled to receive if totally unemployed and eligible, excepting remuneration payable or received as holiday pay not to be deemed wages for the purpose of this subsection?

Benefits are payable under the Unemployment Security Law only to such persons as are unemployed within the definition of that term in the act. The statutory definition of partial unemployment entitling a person to benefits contains two conjunctive requirements. The claimants must bring themselves within both qualifying conditions. The first requirement is that the claimant's work week must be 'of less than full-time work'; the second condition is that the claimant's wages for the particular week exclusive of holiday pay must not be $5 or more in excess of the claimant's weekly benefit amount to which claimant would be entitled if totally unemployed.

Initially, let us say that the exclusion of holiday pay in the definition modifies only the second condition of eligibility. The legislative policy is to deny partial unemployment benefits whenever the employee's wages payable for the particular week are $5 or more in excess of the weekly benefit amount receivable in total weekly unemployment, with the term 'wages' excluding, for the purposes of this eligibility formula, any remuneration received by the employee as holiday pay. The Legislature, however, in no way qualified the first basic requirement of eligibility for partial unemployment benefits, which is, that the week for which the alleged partially unemployed person claims benefits must be a week 'of less than full-time work'.

Full time ordinarily signifies the normal or standard period of labor per day or per week in the establishment where the workman is employed for the kind of work which he is hired to perform. It assumes that a certain number of hours, by contract or management policy, normally constitutes a day's work and that work for a certain number of days constitutes a week's work. When the factory deviates from the normally recognized work day or week as understood by custom in the industry, contract or management policy, it means part time work or overtime. Webster's New International Dictionary (2d Ed.) p. 1018, defines "full time" as "[T]he amount of time *considered* the normal or standard amount for working during a given period, as a day, week, or month." [Emphasis mine]. We rule that in legislative intendment the full-time work-week concept includes as part of the work days thereof any one or more holidays therein for which remuneration at the employee's average rate of pay has been received by him. Since the claimants were fully employed for the first 3 days of the week ending November 26, 1966 and received full holiday pay for the following two-day holiday period, that week was a week of full-time work, five days being the normal and standard week in the industry. They were not partially unemployed.

Our ruling reflects the underlying purposes of the Act insuring labor against the distress of involuntary unemployment and consequent loss of purchasing power which in turn tend to impair the stability of the economy and adversely affect the public welfare. We are mindful of the liberal approach that we must adopt in our interpretation of this social legislation. However, as our Court stated in Toothaker v. Maine Employment Security Commission, 1966, Me., 217 A.2d 203, at 210: "We must take care that we do not alter or change the policy of the law in the process of construction."

We must not, under the guise of a liberal interpretation and construction of the Act, extend its provisions beyond the legitimate goals which it was enacted to attain. The Legislature never intended it to be a health and accident measure, Toothaker v. Maine Employment Security Commission, supra, at page 206; nor that it should lend itself as a medium through which financial aid would be provided for the prosecution and support of a labor dispute, Bilodeau et al. v. Maine Employment Security Commission, et al., 1957, 153 Me. 254, 264, 136 A.2d 522; nor that it should underwrite one's private venture in self-employment, Ham v. Maine Employment Security Commission, 1966, Me., 216 A.2d 866; nor that it should be considered as a form of pension, Richardson v. Maine Employment Security Commission, 1967, Me., 229 A.2d 326.

The Maine Employment Security Law is designed to prevent the spread of unemployment and to lighten its burden upon the unemployed worker, his family and the entire community; to provide for the systematic accumulation of funds from which benefits may be paid for periods of unemployment, thus maintaining the purchasing power of the unemployed and limiting the serious social consequences of unemployment. See Policy Statement, 26 M.R.S.A. § 1042. When employers either voluntarily or as a result of collective bargaining agreements undertake to pay their employees vacation or holiday pay, they are acting in complete unison with the aims and purposes of our Employment Security Law; such industrial behavior exemplifies the true spirit underlying the Act. On the other hand, a construction of the Act which would favor both the payment of vacation or holiday pay together with the payment of unemployment benefits for the very same period for which vacation or holiday pay was received would prostitute the legislation beyond the scope of its purpose and integrate it into a public assistance program which it was not meant to be. See, Wellman v. Riley, 1949, 95 N.H. 507, 67 A.2d 428, 430; Butler v. Bakelite Company, 1960, 32 N.J. 154, 160 A.2d 36, 42, 95 A.L.R.2d 1373; American Insulator Corporation v. Unemployment

Compensation Board of Review, 1958, 186 Pa.Super. 227, 142 A.2d 774.

Courts generally have disallowed unemployment benefits for vacation weeks for which the employee has received vacation pay. Wellman v. Riley, 1949, 95 N.H. 507, 67 A.2d 428; Conon v. Administrator, Unemployment Compensation Act, 1955, 142 Conn. 236, 113 A.2d 354; Cerce v. Director of Division of Employment Security, 1955, 333 Mass. 130, 128 N.E.2d 793; Butler v. Bakelite Company, 1960, 32 N.J. 154, 160 A.2d 36; Annotation, 30 A.L.R.2d 366 § 2.

The same rationale applies to holiday pay. An employee is no more entitled to partial unemployment benefits when working full time the first 3 days of a 5 day week and being paid holiday pay for the 2-day balance of the week, than he would be entitled to total unemployment benefits when on vacation for the full 5 days and receiving vacation pay therefor.

 Though they may not have participated in the policy agreement whereby their employer guaranteed all employees of 60-days standing including themselves holiday pay for Thanksgiving Day and the Friday following, and even though they may not have been in plaintiff's employ at the time and may have entertained personal reservations about said fringe benefits from the time of their initial employment, nevertheless when they accepted the holiday pay under the policy agreement, they must be regarded as having adopted and ratified it. By receiving and retaining the dividends of the employer's fringe-benefits policy-agreement, the individual defendants estopped themselves from claiming the status of unemployed workers within the meaning of the Act for the 2 holidays for which each received full pay. It was tantamount to a voluntary election on their part to take holiday pay instead of seeking unemployment benefits. See, Nunamaker v. United States Steel Corp., 1965, 2 Ohio St.2d 55, 206 N.E.2d 206; State by Bassett v. Hatcher, 1963, 147 W.Va. 748, 131 S.E.2d 172. The Employment Security Law was not intended to create a situation whereby employees could receive both holiday pay and unemployment compensation because of the holiday period. On the contrary, it was designed to protect employees against periods of idleness without income.

We do not intimate what our decision would be if the defendants had not qualified for holiday pay under the existing policy agreement. In the instant case, the claimants received pay for 40 hours full-time work for the week ending November 26, 1966, and failed to qualify for partial unemployment benefits, because the week ending November 26, 1966 was not a week "of less than full-time work" under the statutory requirement, but was a normal and standard full-time work-week consisting of 3 days of 8 hours work and 2 days of rest with holiday pay in accordance with the mutual understanding at plaintiff's plant between labor and management.

The entry will be

Appeal sustained.