Charles W. GROSS and James A. Grant, Plaintiffs-Appellants,

v.

UNIVERSITY OF TENNESSEE and Charles B. McCall, Dean of the College of Medicine, Defendants-Appellees.

No. 78–1261.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1980.

Decided April 9, 1980.

Irwin M. Salky, Ratner, Sugarmon, Lucas, Salky & Henderson, Memphis, Tenn., for plaintiffs-appellants.

Beauchamp E. Brogan, Gen. Counsel, Alan M. Parker, Knoxville, Tenn., for defendants-appellees.

Before MERRITT, BOYCE F. MARTIN, Jr., and JONES, Circuit Judges.

PER CURIAM.

The question on appeal is whether plaintiffs' employment termination violates either 42 U.S.C. § 1983 or the Fourteenth Amendment.

Plaintiffs, Drs. Gross and Grant, were tenured faculty members of the University of Tennessee College of Medicine. At the time the doctors accepted employment, it

was university policy that full-time medical faculty enter into a "medical practice income agreement" that would siphon off outside medical earnings above a certain level. The primary purpose of this rule was to limit the faculty's outside private practice and thus to foster greater devotion to teaching responsibilities. At least one of the plaintiffs, Dr. Gross, acknowledges he was aware of the policy when he accepted employment. One year, however, the plaintiffs refused to sign the income agreement, and following university administrative proceedings, both were terminated. The doctors thereafter filed suit in federal district court for both damages and injunctive relief under § 1983 and the Fourteenth Amendment.

The District Judge on summary judgment dismissed the § 1983 damages claim, holding that UT was not a "person" under § 1983 but a state agency, and that Tennessee had not waived its right of sovereign immunity under the Eleventh Amendment. The District Judge also dismissed the Fourteenth Amendment claim. He held that the doctors had no substantive due process right to conduct a private practice and that there was no violation of equal protection.

Plaintiffs contend that the medical school erected two impermissible "irrebuttable presumptions":

(1) that limiting receivable income limits private practice, and

(2) that private practice interfered with teaching duties. Cf. *Cleveland Board of Educ. v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (irrebuttable presumption that pregnant teachers are unfit violates Fourteenth Amendment).

They also argue that equal protection was violated because this income-limiting agreement was not required of all medical school faculty members.

Last, plaintiffs contend that summary judgment was improper because material facts were in dispute regarding the reasonableness of the income agreements and regarding whether the agreements were required from the medical faculty as a whole.

### Irrebuttable Presumption

■ Plaintiffs' irrebuttable presumption argument is not at all persuasive. Neither public employment nor the unfettered practice of medicine is a fundamental right. Therefore, the question is whether the state's general rule is reasonably related to promoting some legitimate state interest.

■ The legitimate state interest here is the faculty's devotion to teaching responsibilities and it is reasonable that an outside practice might interfere with this. Moreover, the state's method of siphoning off income is reasonably related to effecting this end.

Plaintiffs argue that their courses are an offshoot of their private practice and that a reduced private practice would indeed *impair* the quality of their teaching. Even assuming this is true, however, the administration's rationale need not apply to every individual doctor under a "rational basis" equal protection analysis. And it is reasonable for the administration to conclude—whether or not it is always true—that an outside practice would interfere with some teaching duties.

### Equal Protection

■ In the motion opposing summary judgment, plaintiff Gross alleged at least one faculty member was not required to sign the agreement. The District Judge found this to be immaterial, because the transcripts of the administrative proceedings did not "bear out plaintiffs' contentions." "Particularly in the testimony of Dean McCall [during the administrative hearing], it is asserted, without refutation, that all members of the full-time faculty of UTCHS were required to, and did sign an . . . agreement. In light of the weight of the evidence in the record to the contrary, plaintiff Gross' assertion that he has knowledge of one UTCHS faculty member who has not signed an MPIA is not sufficient to raise a material issue of fact."

In light of this and other convincing evidence that all faculty members were required to comply with the income limitation

agreement, a bare conclusory statement that an unidentified doctor did not participate is insufficient to raise a material dispute which would defeat summary judgment.

Accordingly, the judgment of the District Court is affirmed.