Mary Ann KAUFMAN, Daniel T. Simcox, Charles G. Bloom, Dolores R. Godley, Evelyn N. Jefferson, Yvonne C. Kyler, Ronald J. McBride, Ralph G. Rutherford, and James L. Wilson, Jr., Plaintiffs,

v.

BOARD OF TRUSTEES, COMMUNITY COLLEGE DISTRICT NO. 508 and Oscar Shabat, Defendants.

No. 81 C 2618.

United States District Court, N. D. Illinois, E. D.

June 30, 1981.

On Motions for Preliminary Injunction and Summary Judgment Sept. 3, 1981.

Leon M. Despres, Despres, Schwartz & Geoghegan, Chicago, Ill., for plaintiffs.

Edward J. Karlin, R. Theodore Clark, Jr., Seyfarth, Shaw, Fairweather & Geraldson, George L. Siegel, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, nine tenured faculty members employed by the City Colleges of Chicago, brought this action pursuant to 42 U.S.C. § 1983 against the Board of Trustees of the City Colleges of Chicago, Community Col-

lege District No. 508 ("the Board"), and Oscar Shabat, chancellor and chief administrator of the City Colleges, seeking a declaration that the rule prohibiting "concurrent full-time" outside employment embodied in Article VIII(E) of the current collective bargaining agreement between the Board and the Cook County College Teachers Union, Local 1600, is unconstitutional under the due process and equal protection clauses of the fourteenth amendment both on its face and as applied by the Board. Plaintiffs also seek an injunction against further enforcement of the rule and monetary damages for those plaintiffs who have been dismissed from their teaching positions under the rule. Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343(3) and (4), and the amount in controversy is allegedly in excess of $10,000 exclusive of interest and costs.

This matter is presently before the Court on defendants' motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. As the Court has considered matters outside the pleadings in ruling on the motion, it will be treated as a motion for summary judgment.

Since 1969, the collective bargaining agreement between the teachers union and the Board has included a prohibition against concurrent full-time outside employment applicable to tenured faculty members employed by the City Colleges of Chicago. The rule is currently contained in Article VIII(E) of the collective bargaining agreement which provides:

> A full-time position in the Colleges is accepted with the understanding that the faculty member will not continue, or at a future date accept, a concurrent full-time position or positions equal to a full-time position with any other employer or employers while he is teaching full-time in the Colleges.

A virtually identical provision is also contained in the individual employment con-

tracts signed by full-time faculty members, including the plaintiffs herein, prior to their acquiring tenure. The rationale for the rule, as set forth in the affidavit of John Taylor, Chairman of the Board of the City Colleges of Chicago, is "to insure that faculty members will consider their employment by the City Colleges as their principal and primary employment, which will prompt the faculty members to afford priority to their duties as employees of the Board rather than divide their loyalty, attention and devotion between two full-time positions." In the Board's judgment, the "physical or mental strain" of holding down two full-time jobs "will likely reduce the quality of the teaching provided by such faculty members." Since part-time employment involves shorter hours and less compensation, and does not provide the same kind of benefits as full-time employment, the Board does not prohibit such concurrent employment because "an employee engaged in outside employment part time can be expected to devote his primary loyalty and attention to duties of his full-time employment at the City Colleges." *See* Taylor Affidavit at ¶ 5.

Seven of the nine named plaintiffs in the instant lawsuit have been given notices of dismissal for alleged violation of the rule against concurrent full-time employment and for alleged misrepresentations with respect to such employment in connection with their signing certain "outside employment forms." The plaintiffs who were given notices of dismissal are either awaiting formal hearings on the charges against them pursuant to section 3B-4 of the Illinois Community Colleges Tenure Act, Ill. Rev.Stat. ch. 122, § 103B-4, or, in the cases of those who have already had their hearings, the decision of the hearing officer. Although two of the nine named plaintiffs do not currently have any outside employment, they seek to preserve their right to engage in such employment in the future and maintain that the allegedly unconstitutional rule has a chilling effect in this regard.[1]

---

1. Although the defendants contend, in a footnote in their reply brief, that "a very real question" exists with regard to the standing of those two plaintiffs who have not been given

## I.

■ At the outset, defendants contend that this action is premature since the plaintiffs have not availed themselves of the administrative remedy provided in the Illinois Community Colleges Tenure Act, Ill. Rev.Stat. ch. 122, § 103B–4, for dismissal of tenured community college faculty members. While exhaustion of adequate and appropriate state administrative remedies may be required even in the context of a suit brought under 42 U.S.C. § 1983, *Patsy v. Florida International University*, 634 F.2d 900 (5th Cir. 1981); *Adams v. City of Chicago*, 491 F.Supp. 1257, 1260 (N.D.Ill. 1980), we agree with the plaintiffs that the administrative remedy available to them under Illinois law is inadequate and would not afford them complete relief.

The hearing provided by section 3B–4 of the Community Colleges Tenure Act is conducted by an arbitrator chosen by the parties. After he or she hears all the evidence and testimony, which is taken under oath and subject to cross-examination, the hearing officer is empowered to determine whether there is just cause for dismissal of the tenured faculty member. In the case at bar, however, the plaintiffs challenge the constitutionality of the very rule under which they are to be judged. The hearing officer or arbitrator is not empowered to rule on the constitutionality of the rule on its face or as applied and, indeed, any ruling to that effect that may be made in the context of the hearing may not be binding on the Board in other proceedings. In fact, in one case in which a hearing officer did issue a decision on whether a tenured faculty member employed by the City Colleges of Chicago violated the concurrent employment rule, the hearing officer quoted with approval from an unrelated proceeding involving a prohibition on concurrent full-time outside employment in which the arbitrator sustained an employee's discharge saying, "[w]hether the company regulations are overly restrictive and require finer defi-

nition is a matter for negotiation. The Arbitrator must interpret the language of the policy as he finds it." *In re Safeway Stores, Inc.*, 49 L.A. 400 (1967), quoted in *In re The Board of Trustees of Community College District No. 508 (City Colleges of Chicago)* (April 29, 1981), Exhibit E to the affidavit of W. Rassmussen Holm, Associate Vice-Chancellor for Labor Relations City Colleges of Chicago.

It would therefore be futile to require plaintiffs to raise their constitutional objections in a section 3B–4 hearing before being permitted to challenge the constitutionality of the ban on concurrent full-time employment in this Court. To the extent that they could raise the constitutional issues before the arbitrator, there is no guarantee that plaintiffs could obtain the relief sought even if the arbitrator or hearing officer agreed with them. Moreover, requiring exhaustion in this case would not appreciably aid the development of a factual context in which the constitutional issues might be addressed. The facial validity of the rule against concurrent employment depends upon the language of the rule itself. The challenge to the rule as applied, such as the allegations of discriminatory enforcement, depends to a large extent upon factors that would be irrelevant to the question of whether a particular faculty member violated the rule. Of course, the individual plaintiffs are not precluded from disputing their dismissals for alleged cause in the state administrative hearings, even during the pendency of this case, nor are they precluded from raising the constitutional issues therein, but they need not do so as a prerequisite to challenging the constitutionality of the rule in this Court.

## II.

■ Plaintiffs challenge the constitutionality of the rule against concurrent full-time employment on both due process and equal protection grounds. They contend that the rule violates the due process clause

notices of dismissal, the Court assumes without deciding for the purposes of the present motion that all the plaintiffs are properly before the

Court and that a genuine case or controversy is presented and is ripe for decision.

of the fourteenth amendment because it is vague and overbroad on its face, and because it is not rationally related to a legitimate state interest.[2] The plaintiffs argue that the rule violates the equal protection clause of the fourteenth amendment by creating irrational distinctions between (1) "99% full-time" and "100% full-time" concurrent employment, (2) self-employed and otherwise employed teachers, and (3) faculty members and non-faculty members. Plaintiffs also allege that the Board has arbitrarily and discriminatorily applied the rule since its inception in 1969.

The parties agree that there is no per se fundamental right to public employment and that reasonable restrictions may be imposed on the activities of public employees without running afoul of due process or equal protection requirements. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Trafelet v. Thompson*, 594 F.2d 623, 626 (7th Cir. 1979). Accordingly, the ban on concurrent full-time employment will pass constitutional muster on both due process and equal protection grounds if there is a rational connection between the rule and the Board's legitimate interest in ensuring that full-time faculty members give priority to their teaching duties in order to assure quality instruction in the City Colleges of Chicago. *Harrah Independent School District v. Martin*, 440 U.S. 194, 99 S.Ct. 1062, 1064–65, 59 L.Ed.2d 248 (1979); *Kelley v. Johnson*, 425 U.S. 238,

246–48, 96 S.Ct. 1440, 1445–46, 47 L.Ed.2d 708 (1976); *Thompson v. Gallagher*, 489 F.2d 443, 447 (5th Cir. 1973).[3]

As a threshold matter, the parties contend that the rule prohibiting concurrent full-time employment is so vague that it is devoid of meaning and that it is virtually impossible to determine whether the rule is rationally related to a legitimate state interest. The crux of plaintiffs' argument is the use of the term "full-time," which they contend is both vague and overbroad. The defendants, however, maintain that the term "full-time" employment is commonly used and understood as referring to the normal or standard period of work per day or per week and that the courts have had no difficulty in defining the term in other contexts. The Court agrees that "full-time" is a term of common usage today and that, when it is infused with its commonly understood meaning, the rule against concurrent full-time employment is not vague or overbroad.

Almost 50 years ago, the New Hampshire Supreme Court considered the meaning of the term "full-time" in the context of a workmen's compensation action and concluded:

> We think that the words "full time" in an industrial community like ours have acquired a definite significance which is generally recognized and well settled by popular usage. This term, like its close relatives "part-time" and "overtime," has reference to a customary or normal peri-

---

2. Plaintiffs also maintain that the rule is invalid under the due process clause because it creates an irrebuttable presumption that concurrent full-time employment is detrimental to the faculty member's performance in the classroom. The irrebuttable presumption doctrine, however, is subsumed within traditional equal protection analysis. Thus, as the Seventh Circuit recognized in *Trafelet v. Thompson*, 594 F.2d 623, 630 (7th Cir. 1979), if a classification "is not suspect, does not impair fundamental rights, and is rationally related to a legitimate state purpose, and therefore satisfies the requirements of equal protection, we cannot find it unconstitutional as creating an irrebuttable presumption." *See also Gross v. University of Tennessee*, 620 F.2d 109 (6th Cir. 1980); *Palmer v. Ticcione*, 576 F.2d 459, 463 (2d Cir. 1978),

*cert. denied*, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979).

3. As the Fifth Circuit noted in *Thompson v. Gallagher*, 489 F.2d at 447:

> In many cases, of which this is one, it makes little difference which clause of the Fourteenth Amendment is used to test the statute in question. . . . The question is whether the challenged statute is a rational means of advancing a valid state interest. A regulation not reasonably related to a valid government interest may not stand in the face of a due process attack. Likewise, a classification which serves no rational purpose or which arbitrarily divides citizens into different classes and treats them differently violates the equal protection clause.

od of work. . . . One who works less than the usual number of hours per day is said to have a part-time job. One who works more than the usual number of hours per day is said to work overtime. . . . Full-time ordinarily signifies the normal or customary period of labor per day or per week in the establishment in which the workman is employed for the kind of work which he is hired to perform.

*Cote v. Bachelder-Worcester Co.*, 85 N.H. 444, 160 A. 101, 102 (New Hamp.Sup.Ct. 1932). *See also G. H. Bass and Co. v. Maine Employment Security Commission*, 250 A.2d 492, 496 (Sup.Jud.Ct. of Maine 1969); *Grace v. County of Douglas*, 178 Neb. 690, 134 N.W.2d 818, 821 (1965); *Margie Bridals, Inc. v. Mutual Benefit Life Insurance Co.*, 62 Ill.App.3d 542, 19 Ill.Dec. 547, 379 N.E.2d 62, 65 (1st Dist. 1978). Similarly, *Webster's Third New International Dictionary (Unabridged) (1976)* defines "full time" as "the amount of time considered the normal or standard amount for working during a given period (as a day, week, or month)." *Id.* at 919.

Federal courts also have had occasion to consider the meaning of "full-time" in the context of proceedings under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and in determining whether an employer in interstate commerce has fifteen or more employees within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b). Thus, in *Marshall v. Hudson Stations, Inc.*, CCH Labor Cas. ¶ 33,813 at 48,807 (D.Kansas 1979), a Fair Labor Standards case, the court stated that "[a]lthough in some contexts, especially for statistical purposes, persons working fewer than 40 hours per week are deemed employed full time, we are persuaded that 40 hours per week is the generally accepted standard for

full time employment and applicable to this case." In *Dumas v. Town of Mount Vernon*, 436 F.Supp. 866, 870 (S.D.Ala.1977), a Title VII case, the court found that full-time employees were those who worked a 40 hour work week. *See also Wirtz v. Greenhaw*, 59 CCH Labor Cas. ¶ 32,128 (W.D.Okl.1968) (overtime is more than 40 hours per week).[4]

Thus, the Board's rule against concurrent full-time employment is not vague at all when read in the context of the common sense of the term "full-time." It is generally accepted that a 40 hour week is the normal and customary standard by which to measure full-time employment. Of course, there may be situations in which the normal and customary workweek for persons engaged in a particular occupation or employed by a particular employer is somewhat less than 40 hours, perhaps between 35 and 40 hours, per week. In such situations, a person may be considered to be employed full-time although he or she does not technically work a full 40 hours per week.[5] However, the existence of such variations on the generally accepted concept of full time employment does not render the rule vague on its face. As the Supreme Court recognized in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974), quoting *Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1974):

[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently under-

4. The Fair Labor Standards Act itself refers to a normal workweek as containing 40 hours. 29 U.S.C. § 207(a) and (e)(7). *See also* Wage Hour Administrator Opinion Letter No. 1506 (August 21, 1978), CCH Labor L.Rptr. ¶ 31,203 [1978–79 Transfer Binder].

5. For example, in *Pascutoi v. Washburn-McReavy Mortuary, Inc.*, 11 FEP Cases 1325, 1327 (D.Minn.1975), the court noted that "[i]n

this day of changing work conditions and habits the Court cannot say that a person *must* work 40 hours or more during any seven day period to be considered a full time employee." (emphasis added). In that case, the employer characterized employees who worked between 25 and 45 hours as part-time employees in an attempt to avoid coverage under Title VII.

stand and comply with, without sacrifice to the public interest.

In the Court's view, the rule prohibiting concurrent full-time employment is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Id.*

### III.

■ Having determined that the rule is not unconstitutionally vague on its face, we cannot agree with plaintiffs that the rule is not rationally related to a legitimate state interest. Courts have consistently upheld rules and regulations designed to maintain or improve the quality of instruction in public institutions in the face of constitutional attack. *See Harrah Independent School District v. Martin, supra* (continuing education requirement); *Lamb v. Scripps College*, 627 F.2d 1015, 1021 (9th Cir. 1980) (compulsory retirement furthers faculty excellence); *Gross v. University of Tennessee*, 620 F.2d 109 (6th Cir. 1980) (limitation on outside medical practice fosters greater faculty devotion to teaching); *Cook County College Teachers Union, Local 1600 v. Taylor*, 432 F.Supp. 270 (N.D.Ill.1977) (residency requirement furthers understanding of urban life). Moreover, limitations on outside employment or income have been held to be rationally related to the legitimate interest in assuring that public employees devote their primary energies to their full-time public employment. *Gross v. University of Tennessee, supra; Mulry v. Driver*, 366 F.2d 544 (9th Cir. 1966).

In the case at bar, the rule against concurrent full-time employment is rationally related to the Board's stated purpose of insuring that full-time faculty members will devote their primary loyalty and attention to their duties as employees of the City Colleges of Chicago rather than dividing their time and effort between two full-time jobs. The plaintiffs contend that a faculty member with outside employment may be a better teacher because he or she can use the experience gained outside the classroom to complement and enhance the classroom experience. However, the Board may ration-ally assume that faculty members with full-time outside employment in addition to their responsibilities at the City Colleges will be forced to spend too much time away from more traditional academic pursuits. Indeed, the rule does not arbitrarily prohibit *all* outside employment. It merely restricts *full-time* outside employment during the time that a faculty member is supposed to be engaged in a full-time teaching position. Thus, the rule prohibiting concurrent full-time employment, when infused with its common sense meaning, is rationally related to a legitimate state interest and it does not run afoul of substantive due process principles embodied in the fourteenth amendment.

■ Plaintiffs also contend that the rule irrationally distinguishes between "99% full-time" and "100% full-time" outside employment in violation of principles of equal protection. This contention is based upon an article that appeared in the Chicago Tribune on September 10, 1978, in which Oscar Shabat, Chancellor of the Chicago City Colleges, bemoaned the fact that faculty members had the right to work "up to 99 percent of a full-time outside job" under the collective bargaining agreement between the teachers' union and the Board. The language of the rule itself does not create any such classifications, however, and obviously Chancellor Shabat's comment is merely a graphic representation, from management's perspective, of the Board's rule which permits part-time employment, but prohibits full-time employment. While it may be true that a faculty member who works just under the number of hours required of an outside full-time job is not appreciably better prepared for his or her teaching responsibilities than a faculty member who works just over the full-time limit, the rule is not necessarily invalid merely because the line that it draws is imperfect. As the Supreme Court held in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 316, 96 S.Ct. 2562, 2568, 49 L.Ed.2d 520 (1976), "where rationality is the test, a State 'does not violate the Equal Protection Clause merely because the classi-

fications made by its laws are imperfect,'" citing *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). The line must be drawn at some point, and it is both reasonable and convenient to draw it between the commonly accepted notions of full-time and part-time employment as the Board has done in the instant case. *See also Cook County College Teachers Union, Local 1600 v. Taylor*, 432 F.Supp. 270, 274 (N.D.Ill.1977).

■ Plaintiffs further allege that the rule is invalid under the equal protection clause because it creates an irrational distinction between self-employed and otherwise employed faculty members. The rule, on its face, speaks in terms of "a concurrent full-time position or positions *equal to* a full-time position." (emphasis added). Defendants insist that the rule thus phrased is intended to cover self-employed faculty members who devote the equivalent of a full-time workweek to their self-employment as well as faculty members who work full-time for someone else. Interpreted in such a manner, and we find that the rule is susceptible to such an interpretation, the rule does not create any classification that might conflict with equal protection principles.[6]

■ Plaintiffs' contention that the rule is invalid under the equal protection clause because it does not apply to non-faculty members employed by the City Colleges of Chicago is also without merit. Courts have consistently upheld classifications that differentiate between classes of individuals, including distinctions between teachers and other types of employees, when the difference in treatment does not amount to invidious discrimination. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973); *Cook County College Teachers Union, Local 1600 v. Taylor*, 432 F.Supp. 270, 274 (N.D. Ill.1977); *University of New Hampshire Chapter, American Association of University Professors v. Haselton*, 397 F.Supp. 107, 109–12 (D.N.H.1975). In the case at bar,

there is nothing to suggest that the restriction imposed upon faculty members but not on other City College employees is founded on an invidious basis.

## IV.

Even if the rule prohibiting concurrent full-time employment is not unconstitutional on its face, plaintiffs maintain that the rule has been unconstitutionally applied against certain teachers allegedly engaged in concurrent full-time employment while others are allowed to work two jobs with impunity. For example, plaintiffs assert that the defendants in practice, have exempted self-employed faculty members from coverage under the rule and that they have applied the rule in order to displace senior, higher salaried, tenured faculty members and to retain lower paid faculty. Defendants categorically deny these allegations and they contend that such conclusory statements without any factual support are insufficient to state a claim for relief under 42 U.S.C. § 1983. *Grow v. Fisher*, 523 F.2d 875, 879 (7th Cir. 1975); *Carlisle v. Bensinger*, 355 F.Supp. 1359, 1362 (N.D.Ill.1973).

At this early stage of these proceedings, plaintiffs have not brought forth sufficient facts to support their allegations of discriminatory and arbitrary enforcement of the rule. There is no hint in either the complaint or the affidavits filed in opposition to defendants' motion for summary judgment as to how many faculty members have been "unofficially exempted" from the rule, who they are, or the nature of their concurrent full-time employment. Rather than quibbling over whether the statements regarding discriminatory application of the rule in the parties' affidavits amount to conflicting issues of fact or constitute conflicting conclusory statements, it would be preferable if the plaintiffs would amend their complaint and set forth their claims of discriminatory enforcement with more particularity.

---

**6.** To the extent that plaintiffs' allegations raise questions of discriminatory enforcement of the rule, they will be dealt with in section IV of this opinion *infra*.

Accordingly, defendants' motion for summary judgment is granted insofar as the facial validity of the rule against concurrent full-time employment is concerned. That portion of the motion directed to the validity of the rule as it has been and is being applied is also granted, but the court will allow the plaintiffs to amend their complaint within 20 days in order to cure the deficiencies noted in part IV of this opinion.[7] It is so ordered.

## ON MOTIONS FOR PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT

Plaintiffs, twelve full-time faculty members employed by the City Colleges of Chicago, brought this action against the Board of Trustees of the City Colleges of Chicago, Community College District No. 508 ("the Board") and Oscar Shabat ("Shabat"), chancellor and chief administrator, seeking declaratory, injunctive, and monetary relief on the ground that the rule prohibiting City Colleges faculty members from engaging in concurrent full-time employment outside the Colleges, which is contained in the collective bargaining agreement between the Board and the Cook County College Teachers Union, Local 1600, is unconstitutional on its face and as applied under 42 U.S.C. § 1983 and the fourteenth amendment. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

In an earlier opinion in this case, this Court held that plaintiffs' constitutional challenge to the rule against concurrent full-time employment on its face and as applied was properly before us notwithstanding plaintiffs' failure to exhaust their state administrative remedies, and that the rule was not unconstitutional on its face when infused with its common sense meaning with reference to a normal or customary period of work, usually, but not necessarily, between 35 and 40 hours per week. We allowed plaintiffs an opportunity to amend their complaint, however, so that the

allegations of discriminatory enforcement or application of the rule could be stated with more particularity. *Kaufman v. Board of Trustees, Community College District No. 508,* 522 F.Supp. 90, No. 81 C 2618 (N.D.Ill., June 30, 1981). The plaintiffs have now filed an amended complaint in which they allege that the defendants have applied the rule against concurrent full-time employment to City Colleges faculty members who do not have concurrent full-time employment as that term has been interpreted by this Court and that defendants have arbitrarily and discriminatorily enforced the rule by ignoring the concurrent full-time employment of some faculty members and completely exempting some categories of outside employment, such as self-employment, from the rule.

This matter is presently before the Court on plaintiffs' motion for a preliminary injunction restraining defendants from enforcing the rule and defendants' motion to dismiss or, in the alternative, for summary judgment. In support of their motion, defendants maintain that (1) the faculty members who have received notices of dismissal have concurrent full-time employment in violation of the collective bargaining agreement, (2) self-employed faculty members have not been exempted from application of the rule, and (3) factual disputes regarding individual faculty members charged with concurrent full-time outside employment, as opposed to the broad-based constitutional challenge to the rule on its face and as applied, can be adequately accommodated within the state administrative hearing process. As the Court has considered matters outside the pleadings in ruling on defendants' motion, it will be treated as a motion for summary judgment. Fed.R.Civ.P. 12(b), 56. After a brief discussion of the events leading up to this lawsuit, we will address, respectively, defendants' motion for summary judgment and plaintiffs' motion for a preliminary injunction.

---

7. If, and when, the complaint has been so amended, any motion on behalf of plaintiffs for emergency relief will be promptly addressed by the Court. Again, should the complaint be amended with the particularity suggested in this opinion, such occasion might provide the parties a basis to sit down together in a good faith effort to settle any remaining grievances.

## Background

The rule against concurrent full-time employment has been incorporated in the collective bargaining agreement between the Board and the Cook County College Teachers Union Local 1600 since 1969. As currently contained in Article VIII(E) of the collective bargaining agreement, the rule provides:

> A full-time position in the Colleges is accepted with the understanding that the faculty member will not continue, or at a future date accept, a concurrent full-time position or positions equal to a full-time position with any other employer or employers while he is teaching full-time in the Colleges.

The rationale for the rule, as set forth by the Board and noted in our earlier opinion, is to insure that faculty members devote their primary loyalty, attention, and devotion to their full-time teaching position with the City Colleges rather than dividing their time and energy between two full-time jobs. Concurrent employment is permitted on the assumption that a faculty member with a part-time job outside the City Colleges can still be expected to devote his or her primary efforts to the City Colleges. Similar restrictions on the outside employment of teachers have been upheld in other contexts. *See, e. g., Gross v. University of Tennessee*, 620 F.2d 109 (6th Cir. 1980), and cases cited at page 97 of our earlier opinion.

Plaintiffs maintain, and the defendants do not dispute, that concurrent outside employment is widespread among the faculty at the Chicago City Colleges. This is not surprising since a faculty member with concurrent outside employment is both able to supplement his or her income from the City Colleges and bring experience drawn from the field into the classroom to the benefit of City Colleges students at large. However, defendants maintain, and the plaintiffs do not contend otherwise, that while concurrent part-time employment may be beneficial to the individual faculty member and his or her students, at least if the part-time position is in the faculty member's field of expertise, a faculty member cannot efficiently work two full-time jobs and still provide the same quality of instruction for City Colleges students.

Although defendants contend otherwise, it is fairly clear that between its adoption in 1969 and November, 1980, the rule against concurrent full-time outside employment was not as actively enforced by the City Colleges administration as it has been since November, 1980.[1] Those few faculty members who were charged with engaging in concurrent full-time employment during this period were either allowed to resign from one of their concurrent positions or were subjected to disciplinary action short of termination from the City Colleges.[2] Since November, 1980, however, at least eighteen faculty members have received notices of termination for allegedly engaging in concurrent full-time outside employment.

Of the eighteen faculty members who have been terminated, ten are plaintiffs in the case at bar. Eight of the plaintiffs who received notices of termination

---

1. The defendants maintain that they have "assiduously" enforced the rule against concurrent full-time employment since it was inserted in the collective bargaining agreement in 1969. Although the matter of the defendants' assiduousness in enforcing the rule is a question of fact which, as discussed more fully later in this opinion, is inappropriate for resolution in the context of a motion for summary judgment, it strains credulity to suggest that the defendants first became aware of the significant number of faculty members it now contends were engaged in concurrent full-time employment in 1980 when some of these persons allegedly had been engaged in such dual capacities for twenty years or more.

2. The defendants do not dispute the fact that the Board never terminated a faculty member charged with engaging in concurrent full-time employment before November, 1980. They note, however, that in May, 1979, during proceedings with respect to one faculty member who had been charged with engaging in concurrent full-time employment, the Board adopted a resolution imposing severe sanctions short of termination while also stating that the Board "reserves the right to consider dismissal of a full-time faculty member who holds an outside full-time job or its equivalent."·

have requested a hearing pursuant to section 3B–4 of the Illinois Community Colleges Tenure Act, Ill.Rev.Stat. ch. 122, § 103B–4 (1979), and they are thus technically still employed by the City Colleges pending the outcome of their hearings. In addition, one of the plaintiffs who received a notice of termination, Yvonne Kyler, has had a hearing and is awaiting the arbitrator's decision. The remaining plaintiff who received notice of termination, Robert Donaldson, has resigned from the City Colleges and has not requested a hearing. The other two plaintiffs in the instant action, Mary Ann Kaufman and Daniel T. Simcox, are City Colleges faculty members who do not currently have any employment outside the City Colleges but they seek to preserve their right to engage in such employment in the future, and they maintain that the defendants' allegedly inconsistent interpretation and application of the rule has a chilling effect in this regard.[3]

Both sides to this controversy seem to agree that reasonable restrictions may be imposed upon the activities of public employees like City Colleges faculty members without running afoul of due process or equal protection requirements. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Trafelet v. Thompson*, 594 F.2d 623, 626 (7th Cir. 1979). The parties also apparently agree that if the term "full-time employment" is given its common sense meaning and if the rule prohibiting concur-

rent full-time employment is applied evenly and equitably to all City Colleges faculty members, there are no problems of a constitutional magnitude. The parties' disagreement stems from their different interpretations of the common sense meaning of the term "full-time employment" and their differing views as to how the rule has been applied both systemically and in individual cases.

### The Meaning of the Term "Full-Time Employment" and Its Application in Individual Cases

In attempting to formulate a definition of the term "full-time employment," we proceed from Justice White's admonition in *Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1974), that "there are limitations in the English language with respect to being both specific and manageably brief" that are bound to frustrate any such endeavor. Nevertheless, it appears to the Court, and apparently to the parties herein as well, that the term is susceptible to interpretation such that "the ordinary person exercising ordinary common sense can sufficiently understand and comply with [it], without sacrifice to the public interest." *Id. See also Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974).

In our earlier opinion, this Court stated that " 'full-time' is a term of common usage today and that, when it is infused with its

---

**3.** Defendants contend that plaintiffs Kaufman and Simcox lack standing to challenge the rule on its face or as applied because they do not currently have any outside employment. In our earlier opinion, we noted defendants' standing argument, which then as now is not presented very forcefully, and we assumed without deciding that all plaintiffs were properly before the Court. As the United States Court of Appeals for the Seventh Circuit recently noted in *Peoples Gas, Light & Coke Company v. United States Postal Service*, 658 F.2d 1182 (7th Cir. 1981), the standing doctrine imposes both constitutional and prudential limitations on federal jurisdiction. In its constitutional dimension, the inquiry is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness warranting the plain-

tiff's invocation of federal jurisdiction. *Id.* at 1193–94. The prudential or nonconstitutional arm of the inquiry is whether the plaintiff's interest is arguably within the zone of interest to be protected or regulated by the particular statute or constitutional guarantee involved. *Id.* at 1194–95. In the case at bar, we hold that plaintiffs Kaufman and Simcox have standing to challenge the rule against concurrent full-time employment on its face and is applied. Their interest in determining the parameters of the rule and in assuring that it is evenly enforced so that they may plan their own activities accordingly assures the concrete adverseness that justifies the exercise of federal jurisdiction. Their interest in being free from arbitrary exercise of governmental power is protected under the fourteenth amendment and 42 U.S.C. § 1983.

commonly understood meaning, the rule against concurrent full-time employment is not vague or overbroad." *Kaufman v. Board of Trustees, Community College District No. 508*, 522 F.Supp. 90 at 95, No. 81 C 2618 (N.D.Ill., June 30, 1981). We went on to review state and federal decisions in which other courts had discussed the meaning of the term "full-time" in a variety of employment contexts and also referred to Webster's Dictionary for a commonly-accepted definition. *Id.* at 95–96. We concluded that the term "full-time employment" has reference to the normal or customary period of time per day or per week that a person devotes to his or her occupation. Although we noted that an approximate 40 hour workweek is the normal or customary standard by which to measure most full-time employment, we also rejected a definition of the term that would require a person to work an absolute minimum or maximum number of hours at a particular occupation in order to be considered a full-time employee. Rather, we noted that there are situations in which a person might be considered to be employed full-time despite the fact that he or she does not technically work a full 40 hours a week. We quoted with approval the court's statement in *Pascutoi v. Washburn-McReavy Mortuary, Inc.*, 11 FEP Cases 1325, 1327 (D.Minn.1975) that "[i]n this day of changing work conditions and habits, the Court cannot say that a person *must* work 40 hours or more during any seven-day period to be considered a full-time employee." (emphasis added). *Id.* at 96 n.5.

Thus, the Court attempted to define the parameters of the term "full-time employment" in the context of the generally accepted sense of the term without adopting an absolute or talismanic definition that would not necessarily comport with reality. In their amended complaint, however, plaintiffs have attempted to engraft a rigid requirement onto a flexible standard to the extent that they claim that full-time employment must be construed to mean between 35 and 40 hours per week. For example, plaintiffs maintain that the defendants have wrongfully invoked the rule against concurrent full-time employment with respect to City Colleges faculty members who are also employed as elementary or high school teachers by the Chicago Board of Education. Since elementary school teachers are only required to work 30 hours per week and high school teachers 30 hours and six minutes per week in order to be considered full-time employees by the Chicago Board of Education, plaintiffs argue that they are not full-time employees within the meaning of the 35 to 40 hour "standard" and thus they may not be terminated from their City Colleges positions for alleged concurrent full-time employment.

In support of their contention that persons employed less than 35 hours per week are not to be considered full-time employees, plaintiffs point to our statement at page 96 of our earlier opinion that "[o]f course, there may be situations in which the normal or customary workweek for persons engaged in a particular occupation or employed by a particular employer is somewhat less than 40 hours, *perhaps between 35 and 40 hours, per week*." (emphasis added). In giving this example, however, the Court did not intend to foreclose the possibility that in particular circumstances someone who works less than 35 hours per week might still be considered to be engaged in concurrent full-time employment for purposes of the rule against such activity. Indeed, a system that established an absolute floor of 30, 33, 35 or 37 hours per week as constituting full-time employment might, in some respects, be more arbitrary than one that permits consideration of a number of factors including, but (again) not necessarily limited to the number of hours worked, the number of hours required of full-time employees in a particular occupation or by a particular employer, the amount of extra-curricular time required of particular employees in a particular occupation, the amount of overlap in the workweek of two (or more) ostensibly full-time positions, etc. At least on the surface it seems apparent that a full-time faculty member who works 30 hours per week at the City Colleges should not be considered a

part-time employee of the Chicago Board of Education because he or she only works 30 hours per week as an elementary school teacher.

■ In the Court's view, the administrative hearing process provided in the Illinois Community Colleges Tenure Act is an adequate forum in which to determine whether, in a particular case, a City Colleges faculty member is engaged in concurrent full-time or part-time employment. In our prior opinion, we held that the plaintiffs need not exhaust their state administrative remedies before asserting their claims under 42 U.S.C. § 1983 with respect to the facial validity of the rule or the allegations of discriminatory enforcement because there was no guarantee that the arbitrator or hearing officer would be able to grant the relief plaintiffs sought. The allegations that defendants have terminated some faculty members who do not or did not engage in concurrent full-time employment outside the City Colleges stand on somewhat different footing, however. The hearing officer, chosen by the parties pursuant to Ill.Rev. Stat. ch. 122, § 103B–4, is no less suited than the Court to the task of determining the facts of a particular case and applying the rule against concurrent full-time employment to those facts. The Illinois Community College Tenure Act provides an orderly and fair procedure for the adjudication of individual claims. If the hearing officer determines, after a hearing on the record in which witnesses are placed under oath and subject to cross-examination, that the faculty member was wrongfully terminated, he may order the relief necessary to make the claimant whole including reinstatement and back pay. The hearing officer's decision may be appealed to the Circuit Court of Cook County and through the state appellate process. In such circumstances, exhaustion of state administrative remedies may be required even in the context of a suit under section 1983. *Patsy v. Florida International University*, 634 F.2d 900 (5th Cir. 1981); *Adams v. City of Chicago*, 491 F.Supp. 1257, 1260 (N.D.Ill.1980).

Plaintiffs' objections to an exhaustion requirement in this context are without merit.[4] This Court is not intrinsically more able than the hearing officer to resolve factual disputes in individual cases. Although it would be preferable if the individual hearings were postponed pending resolution of the allegations of discriminatory enforcement in the case at bar, simultaneous proceedings are not necessarily inconsistent per se. The expense of proceeding through the administrative process does not automatically render such a remedy unduly burdensome or inadequate. *See, e. g., The Renegotiation Board v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). The Court is confident that the arbitrator will be able to apply the rule against concurrent full-time employment in individual cases in a manner consistent with this opinion.

### Allegations of Discriminatory Enforcement

Defendants seek summary judgment in their favor with regard to plaintiffs' charges that the rule against concurrent full-time employment has been discriminatorily applied by the defendants in that they have long ignored concurrent full-time employment by City Colleges faculty members until recently and have exempted certain types of outside employment, such as self-employment, from the ambit of the rule. In support of a motion for summary judgment, the moving party has the burden of showing that there is no dispute as to any genuine issue of fact material to a judgment in its favor as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979). The non-moving party is entitled to all reasonable inferences that can be made in its favor from the evidence presented. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961). As a general rule,

---

**4.** The Court will not require exhaustion with respect to the broad based claims of discriminatory enforcement for the reasons set forth in our prior opinion.

questions of motive and intent have been held to be particularly inappropriate for disposition on a motion for summary judgment. *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974).

In the instant case, plaintiffs allege that since the rule against concurrent full-time employment was adopted in 1969, defendants have generally ignored such activity by the City Colleges faculty and that defendants have only recently begun to enforce the rule as a pretext for terminating higher salaried faculty members. Plaintiffs also allege that defendants have not enforced the rule against faculty members who are self-employed, such as lawyers and accountants, though they work the same number or more hours as those faculty members who have been discharged for violation of the rule and that defendants have consistently refused to investigate in a meaningful way those self-employed faculty members who have been brought to their attention. Defendants contend that plaintiffs' allegations are too conclusory to state a valid claim for relief and that plaintiffs have not brought forth specific facts to support their allegations that self-employed persons have been exempted from coverage of the rule or that defendants have not attempted in good faith to enforce the rule in all instances. Rather, defendants maintain that they have "assiduously" enforced the rule since its inception with regard to both self-employed persons and those employed by another.

As we stated earlier in this opinion,[5] it is difficult to believe that defendants first became aware of the number of persons allegedly engaged in concurrent full-time employment only recently when the rule prohibiting such conduct had been in effect for more than ten years. Sworn statements in affidavits submitted by the plaintiffs at least create issues of fact with regard to defendants' enforcement of the rule during this time. Moreover, defendants' current efforts at enforcing the rule with respect to those faculty members identified by plaintiffs as engaging in concurrent employment, which consist of sending form letters to those persons inquiring whether allegations made by plaintiffs or their attorney to the effect that the addressee is engaged in concurrent full-time employment are true, do not necessarily show nondiscriminatory application of the rule as a matter of law. Predictably, defendants received rote responses without any factual support (since none was requested) denying that the writer was engaged in concurrent full-time employment. Most of the responses came from faculty members who presumably had already given the same response on annual "outside employment forms" submitted to defendants. While it may be more difficult to enforce the rule with respect to self-employment, this does not excuse nonenforcement or at least less than vigorous enforcement in this regard. At this stage of the proceedings, the Court is reluctant to conclude that the defendants have supported their contentions of evenhanded enforcement of the rule as to both self-employed persons and those employed by another as a matter of law.

Furthermore, although defendants have submitted affidavits of six faculty members identified by plaintiffs as currently engaged in concurrent full-time self-employment in which these faculty members state that they are only engaged in part-time self-employment, there is no factual support for these statements and, in any event, questions still exist as to the status of the thirty or more other faculty members also identified by plaintiffs as similarly engaged in conduct violative of the rule. At this time, before any meaningful discovery has taken place, it is clear that neither side has buttressed their contentions with adequate evidentiary support. Summary judgment would thus seem to be inappropriate, particularly with regard to questions of motive and intent.

Accordingly, defendants' motion for summary judgment with respect to the allegations of discriminatory enforcement is denied at this time. It is so ordered.

**5.** *See* note 2, *supra.*

*Preliminary Injunctive Relief*

Plaintiffs seek a preliminary injunction restraining defendants from initiating or conducting hearings with regard to plaintiffs' alleged violation of the rule against concurrent full-time employment until a final determination in the case at bar, rescision of the resolutions of the Board which terminate the employment of certain plaintiffs for alleged violation of the rule, and reinstatement during the pendency of this action. Defendants oppose the motion on the ground that the plaintiffs have failed to show the existence of irreparable injury should preliminary injunctive relief be denied and the probability of success on the merits of their underlying claims. *American Hospital Association v. Harris,* 625 F.2d 1328, 1331 (7th Cir. 1980); *Kolz v. Board of Education of the City of Chicago,* 576 F.2d 747, 749 (7th Cir. 1978).

The Court agrees that, as a threshold matter, plaintiffs have failed to show the requisite irreparable injury should their motion be denied. Those plaintiffs who have received notices of dismissal for alleged violation of the rule against concurrent full-time employment have all exercised their right to an administrative hearing pursuant to Ill.Rev.Stat. ch. 122, § 103B–4. The Board has apparently not exercised the option provided under that section of suspending the faculty member without pay pending the hearing.[6] Thus, the plaintiffs are still employed by the Board at this time. The time and expense entailed in pursuing one's administrative remedies does not necessarily render those remedies inadequate or constitute irreparable injury justifying injunctive relief. *The Renegotiation Board v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 22, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974).

Even if the plaintiffs were terminated from their positions before the resolution of the merits of the instant case, this Court would be reluctant to grant preliminary injunctive relief in light of the long line of authority in this and other circuits denying such relief in similar circumstances. *See, e. g., Kolz v. Board of Education of the City of Chicago,* 576 F.2d 747 (7th Cir. 1978); *Ekanem v. Health & Hospital Corp.,* 589 F.2d 316 (7th Cir. 1978); *Theodore v. Elmhurst College,* 421 F.Supp. 355 (N.D.Ill. 1976). There has been no showing that plaintiffs would be unable to obtain other employment in academia or otherwise should they be dismissed or that damages recoverable in the instant case in the event plaintiffs prevail would not be adequate recompense for injuries resulting from defendants' actions. Moreover, should the termination of plaintiffs' employment be upheld on administrative review and defendants choose not to defer actual termination until this litigation is finally adjudicated, adequate relief could be ordered by the Court which would make plaintiffs whole in the event the Court should eventually rule in their favor. This relief, for example, might include reinstatement with back pay and compensation for unrecouped costs expended at the administrative hearing.

Accordingly, plaintiffs' motion for a preliminary injunction is denied. It is so ordered.

*Conclusion*

In summary, the administrative hearing process provided by the Illinois Community College Teachers Tenure Act constitutes the appropriate forum in which to resolve factual disputes in individual cases with respect to whether a faculty member has violated the rule against concurrent full-time employment. This opinion, read in conjunction with this Court's earlier opinion in this case, should provide the hearing officer some guidance in this regard. If such hearings are to be held, for the reasons stated herein, defendants may prefer to de-

---

**6.** Even if the faculty members were suspended pending the hearing, section 3B–4 provides that the faculty member, if acquitted, may recover lost salary due to suspension. The Supreme Court has held that "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974).

fer implementation of any discharge order until final determination of the remaining issues in the case at bar so that, should plaintiffs ultimately prevail herein, any relief could be primarily prospective in nature.

The Court expects that the parties will commence discovery with respect to the remaining claims of discriminatory enforcement forthwith. Once the parties have more fully documented their respective positions, the Court would be willing to entertain renewed motions for summary judgment from either side should the dispute center on purely legal questions. If material factual disputes remain, the Court anticipates that the parties would be able to enter into stipulations as to the undisputed facts so that, to the extent possible, the trial will not devolve into a score or more of mini-hearings on the question of whether a particular faculty member is or is not engaged in activity violative of the rule against concurrent full-time employment. The Court will order discovery closed on December 18, 1981, and the filing of a joint pretrial order in open court pursuant to this Court's form on January 15, 1982. It is so ordered.