**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0030-18T1

T.S.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES,

     Respondent-Respondent,

and

CAMDEN COUNTY BOARD
OF SOCIAL SERVICES,

     Respondent.

Argued August 27, 2019 – Decided September 12, 2019

Before Judges Gilson and Mawla.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Sandra Schick Passaro argued the cause for appellant (South Jersey Legal Services, Inc., attorneys; Sandra Schick Passaro, on the brief).

Stephen J. Slocum, Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Services (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, on the brief).

PER CURIAM

Petitioner T.S. appeals from a July 20, 2018 final agency decision issued by the Director of the New Jersey Division of Medical Assistance and Health Services (Division), which terminated the New Jersey FamilyCare (NJFC) Medicaid benefits of T.S. and her two dependent daughters.[1]  T.S. argues that the Division acted arbitrarily and capriciously by including annualized income from her then-nineteen-year-old daughter, who was a full-time college student working part-time and earning less than the amount required for filing a federal tax return.  We agree and reverse.

I.

T.S. is a single mother.  In 2017, she had two dependent daughters:  T.H., a then-nineteen-year-old college student, and U.P., a then-six-year-old child.

---

[1]  We use initials to protect the privacy interests of petitioner and her family members.

A-0030-18T1

In July 2017, T.S. applied to renew her Medicaid benefits being provided to her and her two daughters. In making her application, T.S. spoke with representatives of the County Welfare Agency (CWA) and submitted a written application and supporting documents. T.S. reported that her daughter T.H. was a college student, who worked part-time, and T.S. expected to claim T.H. as a dependent on her 2017 tax return.

In response to a request from the CWA, T.S. also provided paystubs showing four weeks of earnings she received from her job in June and July 2017, and four weeks of earnings her daughter received from her summer job in June and July 2017. The paystubs show that T.S. earned $12 per hour and during a forty-hour week was paid $480 in gross income. T.H. was being paid $8.38 per hour. During one two-week period, she worked just over twenty-six hours and earned $294.47 in gross income, and during the second two-week period she worked just under thirty-five hours and earned $399.81 in gross income.

On August 9, 2017, the CWA informed T.S. that her household's monthly income exceeded the maximum eligibility limit for Medicaid benefits under the NJFC Program. The notice did not state the amount of T.S.'s household's income that the CWA had calculated or how the CWA calculated the household's income. The notice went on to inform T.S. that her and T.H.'s benefits would

3 A-0030-18T1

be terminated effective August 31, 2017, and U.P.'s benefits would be terminated effective December 31, 2017.

T.S. requested a fair hearing and the matter was transmitted to the Office of Administrative Law (OAL) for a hearing before an Administrative Law Judge (ALJ). Two witnesses testified at the hearing: a Human Services Specialist for the Division and T.S. The parties also submitted documents, which included T.S.'s July 2017 application, the paystubs, a letter from T.H.'s employer, and T.H.'s 2017 W-2 forms. The letter from T.H.'s employer stated that T.H. only worked on a "limited basis, . . . primarily during the summer and occasional weekends while in school." The W-2 forms for T.H. reflected that in 2017, she earned a gross income of $6286.

At the OAL hearing, the Division took the position that the household's income included both T.S.'s income and T.H.'s income. T.S.'s monthly income was calculated to be $2162. Based on the four weeks of earnings from T.H., reflected in her paystubs from June and July 2017, the Division calculated T.H.'s monthly income to be $752 and her annual income to be $9024. Adding T.H.'s income to T.S.'s income, the Division took the position that the household's monthly income was $2914, which exceeded the NJFC eligibility limit of $2349 for a family of three.

In April 2018, the ALJ issued her initial decision. The ALJ accepted the Division's position, finding that T.H.'s household monthly income exceeded the eligibility limit. In that regard, the ALJ found that T.H.'s income should be included because she had a monthly income of $752 and an annual income of $9024. Consequently, the ALJ found that T.S.'s household income was $2914 per month, which exceeded the NJFC eligibility amount of $2349 per month for a household of three. Accordingly, the ALJ upheld the Agency's decision to terminate the family's Medicaid benefits effective August 31, 2017.

Meanwhile, in January 2018, T.S. had provided the CWA with additional information, which included the letter from T.H.'s employer and information on T.H.'s actual 2017 income. Based on that information, in early April 2018, the CWA reevaluated the household's income and found that the family was eligible for Medicaid benefits effective January 1, 2018.

On July 20, 2018, the Director of the Division issued a final agency decision, adopting the ALJ's initial decision in its entirety.[2] The Division accepted the ALJ's finding that T.H.'s income for 2017 was $9024, which was

---

[2] The parties dispute whether T.S. filed exceptions to the ALJ's initial decision. T.S. included in her appendix a copy of a written exception dated May 2, 2018. The Division, however, claims it never received that exception. We need not resolve this dispute because both parties agree that the Division issued a final agency decision and that decision is the subject of our review.

A-0030-18T1

above the exemption from filing a tax return. The Division, therefore, found that the household income included T.H.'s income and the total monthly income was $2914, "which exceeded the $2349 maximum gross monthly household income for a family of three."

## II.

T.S. appeals from the Division's July 20, 2018 final agency decision. She makes two primary arguments, contending that (1) the Division erred in including T.H.'s income, and (2) she was denied due process because the CWA did not give her adequate notice of the basis for terminating her family's Medicaid benefits. We need not reach the second argument, because we agree with T.H. that the Division erred as a matter of law in including T.H.'s income as part of the family's household income.

Initially, we identify our limited role in reviewing a decision of an administrative agency. See In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated responsibility, City of Newark v. Nat'l Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539 (1980), and defer to its factual findings, Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (citing Jackson v. Concord

Co., 54 N.J. 133, 117-18 (1969)). We will not upset the determination of an administrative agency absent a showing "that it was arbitrary, capricious or unreasonable, that it lacked fair support in the evidence, or that it violated legislative policies[.]" Parascandolo v. Dep't of Labor, Bd. of Review, 435 N.J. Super. 617, 631 (App. Div. 2014) (quoting Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)).

In general, "[w]e give deference 'to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme[.]'" Zimmerman v. Sussex Cty. Educ. Servs. Comm'n, 237 N.J. 465, 475-76 (2019) (quoting Acoli v. State Parole Bd., 224 N.J. 213, 229 (2016)). Nevertheless, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Envtl. Prot., 191 N.J. 38, 48 (2007) (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

"Medicaid was created by Congress in 1965 to 'provide medical services to families and individuals who would otherwise not be able to afford necessary care.'" S. Jersey Family Med. Ctrs., Inc. v. City of Pleasantville, 351 N.J. Super. 262, 274 (App. Div. 2002) (quoting Barney v. Holzer Clinic Ltd., 110 F.3d 1207, 1210 (6th Cir. 1997)). "The Medicaid program is fairly characterized as a

'cooperative federal-state endeavor' where, in return for federal monies, states must comply with federal requirements." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 342 (App. Div. 2009) (quoting L.M. v. State, Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484 (1995)).

In 2014, New Jersey expanded its existing Medicaid program in accordance with the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010) (codified as amended in scattered sections of 26 U.S.C. & 42 U.S.C.). See N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., Medicaid Commc'n No. 14-12, Affordable Care Act Eligibility Information (Nov. 17, 2014) https://www.state.nj.us/humanservices/ dmahs/info/resources/medicaid/2014/14-12_Affordable_Care_Act.pdf. Using federal funds, New Jersey expanded NJFC to provide health insurance to previously ineligible adults with income up to 138 percent of the poverty level. Id. at 3, 4 (expanding eligibility to include parents with income under 133 percent of the federal poverty level, and defining household based on federal tax filing concepts, i.e., whether a child is a "tax dependent, regardless of age or student status"). See also N.J.A.C. 10:78-4.1(f)(3) (setting the income limit for applicants who are parents at "133 percent of the Federal Poverty Level"); 42 C.F.R. §§ 435.603(a)(2), (d)(4) (requiring states as of January 1, 2014, to

 A-0030-18T1

calculate financial eligibility in accordance with the modified adjusted gross income (MAGI) method and to "subtract an amount equivalent to 5 percentage points of the Federal Poverty Level for the applicable family size only to determine the eligibility of an individual for medical assistance under the eligibility group with the highest income standard using MAGI-based methodologies in the applicable Title of the Act, but not to determine eligibility for a particular eligibility group[]").  In other words, New Jersey must disregard up to five percent of an individual's income solely for the purposes of determining that individual's eligibility for benefits under the NJFC even if that individual's income exceeds 133% of the Federal Poverty Level.  42 C.F.R. § 435.603(d)(4).

In New Jersey, the NJFC program is administered by the Division in accordance with the Family Health Care Coverage Act, N.J.S.A. 30:4J-8 to -19. See N.J.S.A. 30:4J-10; N.J.A.C. 10:49-1.1(a); N.J.A.C. 10:78-1.3.  The Division establishes policy and procedures for the application process.  See generally N.J.A.C. 10:78-1.1 to -11.5.  Local CWAs evaluate NJFC eligibility.  N.J.A.C. 10:49-1.3; N.J.A.C. 10:78-2.1(b).  CWAs must "[a]ssist program applicants in exploring their eligibility for program benefits" and "[a]ssure the prompt and accurate submission of eligibility data[.]"  N.J.A.C. 10:78-2.1(b)(3), (5).  An

applicant must "[c]omplete, with the assistance of the [CWA], as needed, any forms required as part of the application process; and . . . [a]ssist the [CWA] in securing evidence that verifies his or her statements regarding eligibility." N.J.A.C. 10:78-2.1(c). The CWA then reviews the application "for completeness, consistency, and reasonableness[.]" N.J.A.C. 10:78-2.1(b)(2).

NJFC regulations require that income include "the income of all members of the household unit." N.J.A.C. 10:78-4.3(a). The regulations go on to provide that "natural or adoptive children under the age of 21" are members of the household unit. N.J.A.C. 10:78-3.5(a)(1)(iii). Nevertheless, income eligibility determinations for the expanded Medicaid program under the ACA are required to be made pursuant to the federal income counting methodology known as MAGI. 42 C.F.R. § 435.603(a)(2). Under federal regulations, income of a dependent is not included in the household income when the dependent is not required to file a federal tax return. 42 C.F.R. § 435.603(d)(2)(i). In that regard, the applicable federal regulation states:

> The MAGI-based income of an individual who is included in the household of his or her natural, adopted or step parent and is not expected to be required to file a tax return under section 6012(a)(1) of the Code for the taxable year in which eligibility for Medicaid is being determined, is not included in household income whether or not the individual files a tax return.

A-0030-18T1

[Ibid.]

Federal law requires that a tax return be filed for every individual having taxable yearly gross income that equals or exceeds the exempt amount. 26 U.S.C. § 6012(a)(1). In 2017, the exempt amount for filing a federal income tax return for a single dependent was $6350. Dep't of the Treasury, Internal Revenue Serv., Publication 501, Exemptions, Standard Deduction, and Filing Information for Use in Preparing 2017 Returns 4 (Jan. 2, 2018).

Here, the Division adopted the ALJ's fact findings concerning T.S.'s household gross monthly income. As already noted, the ALJ, relying on four weeks of paystubs from June and July 2017, found that T.H.'s monthly income was $752 and her annual income was $9024. Thus, the Division found that T.H. had income that was above the exempt amount, and which required T.H. to file a tax return. The Division then went on to find that T.H.'s income should be included with T.S.'s household income.

The Division's fact findings, however, are not supported by the evidence in the record submitted during the OAL hearing. The ALJ and the Division focused solely on the four weeks of paystubs submitted for T.H. At the OAL hearing, however, T.S. also submitted a letter from T.H.'s employer and T.H.'s W-2 forms for 2017. The letter and W-2 forms established that T.H. was not

working on a full-time or consistent basis. Thus, using the paystubs to project monthly and yearly income was not reasonable or consistent with federal law and regulations. Instead, the material, undisputed facts, which were included as part of the OAL record, established that T.H.'s income for 2017 was $6286, as reflected in her W-2 forms. Accordingly, under federal regulations, T.H. did not have to file a federal tax return and her income should not have been included in T.S.'s household income.

In making their determinations, both the ALJ and the Division focused on the information that T.S. provided with her application filed in July 2017. In particular, the ALJ and the Division relied on the four weeks of paystubs provided for T.H. Looking only at the application and paystubs, there may have been some confusion concerning the scope and nature of T.H.'s work. At the OAL hearing, however, T.S. clarified that T.H. was a full-time student and only worked part time. Significantly, as we have noted, T.S. then submitted a letter from T.H.'s employer and T.H.'s W-2 forms for 2017. The ALJ and the Division ignored that supplemental information. Under the circumstances of this case, we find that it was arbitrary and capricious for the Division not to consider that supplemental information.

NJFC regulations make it clear that CWAs, which assist the Division in making eligibility determinations, are charged with reviewing applications for completeness, consistency, and reasonableness. N.J.A.C. 10:78-2.1(b)(2). The CWAs are also directed to assist applicants in exploring their eligibility for assistance. N.J.A.C. 10:78-2.1(b)(3). Consequently, had the CWA made reasonable inquiries with T.S., it would have learned that T.H. was only working part time, was unlikely to have income requiring her to file a federal tax return, and, therefore, her income should not have been included in the household income. Indeed, in January 2018, the CWA made exactly that determination.

We further note that this appeal is focused on the loss of Medicaid benefits for T.S. and T.H. between September 1, 2017 and December 31, 2017. Based on T.S.'s 2017 application, her benefits and T.H.'s benefits were terminated effective August 31, 2017. Those benefits were later reinstated effective January 1, 2018. On this appeal, we reverse the July 20, 2018 final agency decision upholding the termination of the benefits effective as of August 31, 2017.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION